FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUN -2  PM 1: 27

CLERK'S OFFICE
AT BALTIMORE

Pro Se
Marcella Holloman
3531 Elmora Avenue
Baltimore, Maryland 21213

## IN THE UNITES STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

**MARCELLA HOLLOMAN**
3531 Elmora Avenue
Baltimore, Maryland 21213

v.                                         CIVIL ACTION NO. **CCB-14-1516**

**STEPHANIE RAWLINGS-BLAKE**
City Hall
100 Holliday Street
Baltimore, Maryland 21202

**BERNARD "JACK" YOUNG**
City Council President
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**JAMES B. KRAFT**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**BRANDON SCOTT**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**ROBERT CURRAN**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**BILL HENRY**
Member of the City Council
City Hall

[Summary of pleading] – 1

100 N. Holliday Street
Baltimore, Maryland 21202

**ROCHELLE "RIKKI" SPECTOR**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**SHARON GREEN MIDDLETON**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**NICK  MOSBY**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**HELEN HOLTON**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**WILLIAM "PETE" WELCH**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**EDWARD REISINGER**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**WILLIAM COLE**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**CARL STOKES**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**WARREN BRANCH**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**MARY PAT CLARKE**
Member of the City Council
City Hall
100 N. Holliday Street
Baltimore, Maryland 21202

**GREGG L. BERNSTEIN**, State's Attorney
Courthouse West, Room 208
100 N. Calvert Street
Baltimore, Maryland 21202

**ANTHONY BATTS,** Commissioner
Baltimore City Police Department
242 W. 29th Street
Baltimore, Maryland 21211-2908

**PAUL MARKOWSKI**, Police Officer
Baltimore City Police Department
242 W. 29th Street
Baltimore, Maryland 21211-2908

**GREGORY BRAGG**, Police Officer
Baltimore City Police Department
242 W. 29th Street
Baltimore, Maryland 21211-2908

Defendants

**ORIGINAL COMPLAINT**
**Demand for a Jury Trial**

**INTRODUCTION**

This is an action for Constitutional violations and state law personal injuries suffered by Plaintiff as a result of the unreasonable search and seizure, personal injury, and wrongful death of Plaintiff's decedent, Maurice Donald Johnson. Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Decedent of his federally protected right

to be free from unreasonable seizure and unreasonable force. U.S. CONST. amends. IV, V, VIII, and XIV.

The following claims are brought pursuant to the Americans with Disabilities Act of 1990, as amended 42 U.S.C. sec. 12101 et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. sec. 701 et seq. (Rehabilitation Act), and the 4th, 5th, 8th, and 14th Amendments to the Constitution for allegations of the denial of due process and equal protection under Federal, as well as, Maryland State laws resulting in the death of Maurice Donald Johnson without cause.

Plaintiff, Marcella Holloman, Pro Se, brings this action on the behalf of the Estate of Maurice Donald Johnson, Plaintiff's son. Plaintiff, in representing the interests of her son, as next of kin to the Decedent, respectfully comes before this Honorable Court in this cause as a pro se litigant due to the difficulty that being able to obtain counsel presents involving actions against Defendants in cases like this. Plaintiff respectfully relies on Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), where the Court stated that; "A Pro Se litigant's pleadings are to be construed liberally and to a less stringent standard than formal pleadings drafted by lawyers…If a Court can reasonably read the pleadings to state a valid claim on which plaintiff could prevail, it should do so despite the plaintiff's failure to site proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements" (Citation Omitted)." See also Riley v. Greene, 149 F. Supp. 2d 1256 (D. Colo. 2001).

It is Plaintiff's sincere wish that the Court recognizes the need for justice in this case, demonstrated in the cases of the young, vibrant, and remarkably healthy decedents aforementioned herein to support her claims, that have had their lives taken unlawfully by acts of violence perpetrated by City officials acting under the color of law, to award the relief demanded in this action in an effort to protect our young men and women from senselessly being murdered by those officials. To that end, Plaintiff respectfully request that in light of her *pro se* status at present, and in consideration of the discretion

granted to the Court in cases of this magnitude and importance, that the Court permits the opportunity to

cure any error within reason associated with this filing, as to permit the adjudication of the merits of this

claim prior to a hearing before the Honorable Court.

## JURISDICTION STATEMENT

Because the allegations contained in this complaint involve violations of federal laws and the

United States is a defendant, the United States District Court has original jurisdiction over this claim. In

order for this Court to invoke subject matter jurisdiction under 42 § U.S.C. 1983, plaintiff will show that

defendants were acting under the color or authority of law.

In order to state a claim of conspiracy pursuant to 42 U.S.C. § 1985(3), plaintiff must allege that

"racial, or otherwise class-based, invidiously discriminatory animus lay behind the defendants' actions,"

and must "set forth facts from which a conspiratorial agreement between the defendants can be inferred."

Parrott v. Abramsen, 2006 U.S. App. LEXIS 25671, *5 (3d Cir. Oct. 16, 2006); see also Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971). It is the intent of plaintiff to prove this element existed, in this

complaint, as well.

42 U.S.C. § 1986 "provides a cause of action against anyone who, having knowledge that any of

the wrongs in § 1985 are about to be committed, 'and having power to prevent or aid in preventing the

commission of the same, neglects or refuses to do so.'" Gay v. City of Philadelphia, 2005 U.S. Dist.

LEXIS 15840, *23 (E.D. Pa. Aug. 2, 2005) (quoting 42 U.S.C. § 1986), aff'd 2006 U.S. App. LEXIS

26878 (3d Cir. Oct. 26, 2006). "In order to maintain a cause of action under § 1986, [plaintiff] must show

the existence of a § 1985 conspiracy." Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994).

As a direct result of the policies, practices, customs and procedures of the City of

Baltimore ( the "City"), Decedent Maurice Donald Johnson was intentionally deprived of his

constitutional right to be free from unreasonable searches and seizures guaranteed to him by the Fourth

Amendment to the United States Constitution. Defendant Markowski and Defendant Bragg, are police officers acting in the course and scope of their employment with the City of Baltimore, and acting under color of state law, unjustifiably shot and killed Maurice Donald Johnson under circumstances where no reasonable police officer would have done so. Under long established law on excessive deadly force, Defendant Markowski and Defendant Bragg are not entitled to qualified or other immunity for these actions.

**PARTIES**

Plaintiff brings this action on the behalf of the Estate of Maurice Donald Johnson, Plaintiff's son and has been appointed the administrator of the estate. Plaintiff, a resident of the State of Maryland, brings this action, as the surviving family member and sole heir at law of her son's estate, and as the only person entitled to recover damages because of the Maurice's wrongful death.

Defendant **PAUL MARKOWSKI** is an individual residing in Maryland. The acts and omissions complained of herein arise from the conduct of Defendant while he was acting under color of state law, and each act and omission was committed pursuant to Officer Markowski's employment and authority as a police officer with the City of Baltimore

Defendant **GREGORY BRAGG** is an individual residing in Maryland. The acts and omissions complained of herein arise from the conduct of Defendant while he was acting under color of state law, and each act and omission was committed pursuant to Officer Bragg's employment and authority as a police officer with the City of Baltimore.

Defendant **STEPHANIE RAWLINGS-BLAKE** is the Mayor of Baltimore City Council whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the State of Maryland.

Defendant **BERNARD "JACK" YOUNG** is the Baltimore City Council President whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **JAMES B. KRAFT** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **BRANDON SCOTT** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **ROBERT CURRAN** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **BILL HENRY** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **ROCHELLE "RIKKI" SPECTOR** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **SHARON GREEN MIDDLETON** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **NICK  MOSBY** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **HELEN HOLTON** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **WILLIAM "PETE" WELCH** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **EDWARD REISINGER** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **WILLIAM COLE** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **CARL STOKES** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **WARREN BRANCH** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **MARY PAT CLARKE** is a member of the City Council for Baltimore whose office is located at City Hall 100 N. Holliday Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **GREGG L. BERNSTEIN** is the Baltimore City State's Attorney who has an office located at Courthouse West, Room 208 100 N. Calvert Street Baltimore, Maryland 21202. Defendant is a resident of the City of Baltimore.

Defendant **ANTHONY BATTS** is the Commissioner of the Baltimore City Police Department who has an office located at 242 W. 29th Street Baltimore, Maryland 21211-2908. Defendant is a resident of the City of Baltimore.

## FACTS

Maurice Donald Johnson was 31 years old when he was shot to death by Defendants Markowski and Bragg, both uniformed officers for the Baltimore City Police Department. Maurice was diagnosed as being bi-polar, a mental disorder in which he received disability benefits for. This mental illness was well known and the existence of his illness was contained in the Maryland State database of persons knowing to possess mental disorders of the like.

Officer Markowski was well aware of Maurice's disorder from other interactions he had with him and his knowledge of Maurice's name being contained on the database, as mentioned.

Officer Markowski and Officer Bragg failed to follow the policies of the Baltimore City Police Department, further provoking the situation and did unlawfully cause the death of Mr. Maurice Donald Johnson in the living room of Plaintiff's home.

The shooting death occurred on May 19, 2012, at 5:17 p.m. at the home he shared with his mother located at 3531 Elmora Avenue, Baltimore, Maryland 21213, which is owned by Decedent's mother, the plaintiff in this action.

On May 19, 2012, at approximately 5:05 p.m. Defendant Paul Markowski was on duty working as a police officer for the City of Baltimore and responded to a 9-1-1 call from 3531 Elmora Avenue Baltimore, Maryland 21213. Officer Markowski was wearing his official Baltimore City Police Department uniform, and all times hereto, was acting within the course and scope of his employment with the City. At all times material in this complaint, Officer Markowski was acting under color of state law.

On May 19, 2012, at approximately 5:05 p.m., Defendant Gregory Bragg was on duty working as a police officer for the City of Baltimore and responded to a 9-1-1 call from 3531 Elmora Avenue Baltimore, Maryland 21213. Officer Bragg was wearing his official Baltimore City Police Department uniform, and all times hereto, was acting within the course and scope of his employment with the City. At all times material in this complaint, Officer Bragg was acting under color of state law.

On May 19, 2012 at approximately 5:00 p.m., Plaintiff's son, Maurice Donald Johnson (hereinafter referred to as "Maurice" or "Decedent") arrived at the above residence visibly upset. Plaintiff did not immediately know the reason why he was upset and wanted to have him transported to the hospital for treatment.  Maurice refused to comply with Plaintiff's desire to have him seek professional intervention for this event.

Plaintiff called 9-1-1 at approximately 5:05 P.M., requesting the response of both the Baltimore Police and Fire Department to assist her in having Maurice transported to the hospital for that treatment.

As Officer Paul Markowski, badge number 4C13 arrived on location and approached the residence at 3531 Elmora Avenue, at 5:17 P.M., Plaintiff informed him that she had gained control of the

1    situation and that Maurice was in the back yard of the residence. Upon this arrival, Officer Markowski

2    entered Plaintiff's home via the front door.

3

4         Plaintiff informed Officer Markowski that Maurice was, "o.k.", or "he was fine" and suggested

5    that Officer Markowski wait for his "back-up" or the next responding officer, as per Baltimore City

6
     Police Department policy. This officer is identified as Gregory Bragg, Police Officer, Baltimore City
7

8    Police Department, badge number 4C15.

9

10        Officer Markowski paid "no mind" to Plaintiff's suggestion and he continued to enter the

11   residence. Officer Markowski began to "look around" at the contents of the residence, observing portraits

12
     that were hanging on the walls, and observing the floors and ceilings until he was in the kitchen area.
13

14        Plaintiff again informed Officer Markowski that he was to await the arrival of the next

15
     responding officer to the location and requested him to wait outside in the front area of the residence. As
16

17   Plaintiff was employed as a professional healthcare provider to people with various disabilities at the time

18   of Maurice's death, including those patients diagnosed with mental disorders, she has experience through

19
     practical application of her training to recognize potential mental health crisis when they occur. Plaintiff
20

21   has also been trained in the policies of the Baltimore City Department regarding incidents that require

22   contact between police officers and these patients.

23

24        The next responding officer is identified as Officer Bragg. Officer Markowski continued to the

25   location of the rear door of the residence, which was closed and locked. Officer Markowski called

26
     Maurice's name, which caused him to knock on the door in order to speak to Officer Markowski. By this
27

28   time, Officer Bragg had arrived and made his way to the location of Officer Markowski. Officer Bragg

29   then undid the safety strap on his holster and Plaintiff informed Officer Bragg, "not to shoot my son."

30
     Officer Bragg unlocked the rear door and opened it.
31

32

Officer Markowski grabbed Maurice by the left arm, using both hands and Officer Bragg grabbed Maurice's right arm in a similar fashion, although there was no reasonable suspicion or probable cause that Maurice had committed any crime. At this time, Officer Markowski, without provocation or justification, physically attacked Maurice. As allowed by law, Maurice attempted to resist this unlawful force.

Officer Markowski or Officer Bragg had not witnessed the Decedent engage in any illegal conduct before Officer Markowski approached and attacked him. At no time did Maurice make any sudden movements or gestures that could have been interpreted by Officer Markowski as aggressive or threatening. Maurice did not say or do anything that would cause Officer Markowski to fear imminent bodily harm. Maurice had no intent to harm Officer Markowski, Officer Bragg, or any other person, or commit any violation of the law. Furthermore, Officer Markowski and Officer Bragg could clearly see that Maurice was unarmed and had no reason to believe that he posed a danger to himself or any other person.

Maurice was able to break free and a struggle ensued between him and Officer Markowski which eventually led to them both falling to the floor. Maurice was able to get on top of Officer Markowski and Officer Markowski then reached for his service weapon. Officer Markowski discharged his service weapon twice at point blank range, striking Maurice in the chest. Officer Bragg discharged his service weapon, striking Maurice in the back.

Maurice fell forward and made a sound which represented his last breath and expired at 5:18 P.M. The time interval between the arrival of the officers aforementioned and Maurice becoming the Decedent was approximately one minute or less.

## PLAINTIFF'S CIVIL RIGHTS CLAIM

The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

*Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.*

Plaintiff alleges that Defendants, jointly and/or severally, deprived Plaintiff's Decedent of his Fourth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Decedent's rights in the following ways:

(A) By using excessive and deadly force in the course of Officer Markowski's and Officer Bragg's attempt to seize Maurice, in violation of the Fourth Amendment and its reasonableness standard. Plaintiff pleads that Maurice was unlawfully shot and killed. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable;

(B) By failing to provide medical attention, where it was clearly necessary and required by law; and

(C) By failing to provide supervision and/or proper training to prevent such incidents of excessive force.

Defendants' violations of Maurice's constitutional rights resulted in his suffering and death and were a direct cause of Plaintiff's injuries. Plaintiff brings claims against Officer Markowski and Officer Bragg, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

At all material times, Officer Markowski and Officer Bragg were acting under color of state law as agents and employees of Defendant, the City of Baltimore ("City"). Defendants were wearing their

official Baltimore City Police Department uniforms, and were acting in the course and scope of their duties as Baltimore City Police Officers at the time they shot and killed Decedent.

Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer. *See Graham v. Connor*, 490 U.S. 386, 398 (1989). The facts and circumstances of this case show that Defendant Markowski and Officer Bragg's act of shooting and killing Decedent was clearly unreasonable.

At the time of the incident, neither Officer Markowski nor Officer Bragg had any reason to believe that Maurice was armed or dangerous. First, Maurice made no violent movements towards Defendants or any other person that could be interpreted as threatening. Second, Maurice made no verbal threats to Officer Markowski, Officer Bragg, or any other person. Third, Maurice did not touch Officer Markowski other than to repel Officer Markowski's unlawful attack. Fourth, it was clear to Officer Markowski that Maurice was unarmed and did not have any weapon or dangerous device readily at hand.

Officer Markowski nor did Officer Bragg have a reasonable fear of imminent bodily harm when they shot and killed Maurice nor did they have a reasonable belief that any other person was in danger of imminent bodily harm from Maurice. Consequently, shooting and killing Maurice was unwarranted under these circumstances, and was objectively unreasonable when comparing or balancing the amount of force used against the need for the force.

Therefore, by using subjectively and objectively unreasonable deadly force while acting under color of state law, Officer Markowski and Officer Bragg violated Decedent's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused his wrongful death.

### PLAINTIFF'S CLAIM: 42 U.S.C. § 1983—MUNICIPAL LIABILITY

Plaintiff pleads that Decedent's constitutional rights were violated when he was shot and killed by Defendants. The Plaintiffs' injuries directly resulted from the excessive use of deadly force in shooting and killing Decedent.

The City of Baltimore is also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers, and for overlooking and covering up officer misconduct. In addition, the City had a general policy, pattern and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The City's failure to supervise and train its police officers, and the City's willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights including the right to be free from unreasonable search and seizure and the rights conveyed to Plaintiff, as applied through 42 U.S.C. Sections 1983 and 1988.

An August 22, 2012 newspaper article published in the Baltimore Sun reported that up until that time in 2012, Baltimore police officers had shot 10 people, 8 of them fatally. A number of these victims had been diagnosed with some sort of mental illness. It raised questions about the training, or lack of it, that Baltimore City police officers had with handling situations with interactions will citizens who suffer with mental illness.

Including the shooting death of Maurice on May 19, 2012, here is a list of some of the demonstrated instances where the tactics of Baltimore police officers raised those questions.

David Yim, 39, was shot and killed by Baltimore Police officers on April 10, 2012 after a call for medical assistance brought about their response and arrival on the scene of the incident prior to medical personnel. Mr. Yim, according to his mother, was disabled and suffered partial paralysis to one of his arms.

Tyrone West, 44, was killed on July 18, 2012 during an encounter with Eight Baltimore police officers, Nicholas David Chapman, Matthew Rea Cioffi, Alex Ryan Hashgen, Eric Maurice Hinton, Danielle Angela Lewis, Derrick Dewayne Beasley and Latreese Nicole Lee, and one Morgan State University officer were involved in the incident. This was the result of a traffic violation that occurred in the 1300 block of Kitmore Road. One witness said that the police officers grabbed Mr. West from his vehicle by his hair and sprayed him with mace, as they kicked him in the head and body. None of these officers were immediately suspended following Mr.West's death.

Mr. Rudolph Bell, 63, was killed by police officers on August 16, 2012 after being called to the 1600 block of West Lexington Street to investigate a 911 call for a burglary. Neighbors and friends said the victim, Rudolph Bell, was a homeless veteran who had recently emerged from a Veterans Affairs program and was affectionately known around the neighborhood as "Mr. Rudy."

Anthony Anderson, 46, died after a confrontation with police in east Baltimore on Sept. 21. Mr. Anderson died from blunt-force trauma, which included broken ribs and a ruptured spleen. Police ruled his death a homicide, which officials confirmed and his family has alleged that officers beat him to death in a vacant lot.

The above mentioned incidents demonstrate an extreme indifference to the severity of this problem by all Defendants in this matter.Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

In the present case, the City's formal and informal actions in overlooking, hiding and/or tacitly encouraging police misconduct through other officers, the IAD Department, the Baltimore City Police

Chief Anthony Batts and the City Council reflect a policy, practice custom and procedure authorizing and allowing the use of excessive force that violated the civil rights of Decedent. Consequently, the City is liable for harm caused to others, such as Plaintiff, as a result of its policies, practices customs and procedures. Defendant Mayor and City Council are liable for the constitutional torts of Officer Markowski and Officer Bragg because they sanctioned the following customs, practices, and policies:

(A) Using excessive, and oftentimes deadly force, to carry out otherwise routine

arrests or stops;

(B) Using deadly force when such force is not necessary or permitted by law;

(C) Ignoring the serious need for training and supervision of its officers in regards to

the use of force;

(D) Failing to discipline those persons whom are found to have engaged in the use of excessive

force upon those entrusted to their care and/or under their control;

(E) Failing to adequately supervise and/or observe its officers;

(F) Failing to adequately train officers regarding the availability of alternative means

of detaining persons other than the use of force or deadly force.

(G) Failing to discharge officers who have shown a pattern or practice of using

excessive force; and

(H) Adopting a practice whereby officers who are unfit for peace officer duties, as

shown by prior actions in the line of duty, are allowed to retain their positions.

At the time Officers Markowski and Bragg shot and killed Decedent, they were acting pursuant to an official city policy, practice, custom and procedure overlooking and/or authorizing police officer's excessive use of force. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 659 (1978). Thus, the City's policy of overlooking and cover up police brutality was a direct cause of Plaintiff's injuries. In particular, the City's policy caused Decedent to be deprived of his constitutional rights to be

free from unlawful seizures and objectively unreasonable force under the Fourth and Fourteenth Amendments and his rights taken, as applied through 42 U.S.C. Section 1983 and 1988.

The Mayor and City Council of Baltimore are liable for injuries suffered as a result of the death of Maurice, proximately caused by a City employee's commission of a wrongful act in the course and scope of his employment through the use or misuse of tangible personal property; namely, Defendant Markowski and Officer's Bragg's service weapon required by his employer, the City of Baltimore.

Pursuant to the Local Government Tort Claims Act, the City of Baltimore had actual notice of the events giving rise to this lawsuit within the six-month period following the unlawful shooting of Decedent by notification requirements found in the Maryland Local Government Tort Claims Act. Also, notification was made by police incident report, IAD Report signed off by the Chief of Police, TV News reports and public meetings where his death was brought to the attention of Mayor Stephanie Rawlings-Blake and the City Council.

Under Maryland law, the parallel cause of action for excessive force is a cause of action for assault and battery. Consequently, Plaintiff alleges an alternative pendent state law claim for assault and battery, incorporating the allegations contained in this complaint.

Officer Markowski and Officer Bragg committed an assault upon Maurice when they intentionally, knowingly, and/or recklessly caused Maurice to be shot. Officer Markowski and Officer Bragg's assault conduct was committed intentionally, knowingly, and/or recklessly, and was the proximate cause of physical and emotional injuries to the Plaintiff. Said injuries were the direct and immediate consequence of Officer Markowski and Officer Bragg's wrongful acts and a natural and direct result of the assault. At no time was said Officers Markowski and Bragg privileged to take the action, as lethal force was not necessary under the circumstances.

## PLAINTIFFS'NEGLIGENCE CLAIMS

In the alternative to the above claims, Plaintiffs bring the following claims of negligence against Defendants the Mayor and City Council of Baltimore, and the State's Attorney for Baltimore City Gregg Bernstein. Defendants' negligence includes, but is not limited to, the following acts and omissions:

a) Defendants negligently hired Officers Markowski and Bragg, despite knowledge that they could harm the citizens of the City;

b) Defendants failed to screen, or adequately screen, Officers Markowski and Bragg;

c) Defendants failed to train, or adequately train, Officers Markowski and Bragg;

d) Defendants failed to supervise, or adequately supervise, Officers Markowski and Bragg; and

e) Defendants negligently retained them both even though Defendants knew, or should have known, that Officer Markowski and Bragg posed a danger to the public.

Each of the above listed acts and/or omissions, taken singularly or in any combination, rise to the level of gross negligence. Defendants' acts and omissions, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of harm to others. Defendants the Mayor and City Council of Baltimore, and the State's Attorney for Baltimore City Gregg Bernstein had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Therefore, Defendants were grossly negligent, for which Defendants are liable for exemplary damages.

## PLAINTIFFS'REQUEST FOR PERMANENT INJUNCTION

In addition to the aforementioned facts, Plaintiff states that the City of Baltimore has a policy, procedure and/or practice that discourage citizen complaints. The City of Baltimore requires, *inter alia*, a complainant to submit a lengthy complaint form that must be sworn and notarized, potentially subjecting the complainant to a perjury charge if any fact stated in the complaint is not absolutely accurate. The City of Baltimore also has a policy, procedure and/or practice of condoning excessive force and then covering

up police officer misconduct. According, Plaintiffs respectfully request permanent injunctive relief in the form of a Court Order directing the City of Baltimore that: (a) autopsy reports in police shooting deaths are not to be withheld from the public; (b) a public independent review board is to be created without its members being appointed by the City of Baltimore and it shall have subpoena power; (c) internal affairs reports in excessive force cases must be made public after one year from any incident; and (d) police complaint forms cannot require that citizens swear under oath to the facts in the complaint.

## DAMAGES

In addition to the damages mentioned in the preceding paragraphs as a direct and proximate result of the intentional and unlawful conduct of Defendants, Plaintiff has suffered, and in reasonable probability will continue to suffer damages, as described in the paragraphs below.

As a direct and proximate result of Defendants' tortious acts and omissions, Maurice suffered pain and mental anguish from the time of the shooting, until his death. Maurice likewise incurred funeral expenses. This claim survives to the Decedent's Estate and such claim is hereby made.

Plaintiff Marcella Holloman, brings this action pursuant to Maryland State law and as applied through 42 U.S.C. § 1983 and § 1988. Plaintiff is a statutory beneficiary and may bring this action for the wrongful death of his beloved son. Under the law, Plaintiff, as a surviving parent of the Decedent, is entitled to recover damages for the following:

    a.      Pecuniary Loss resulting from the Death of Maurice Donald Johnson, including, but not limited to, the care, maintenance, support, services, education advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that the surviving parent would have received from Maurice, had he lived.

b.       Termination of the Parent-Child Relationship: The positive benefits flowing from the love, support, companionship, and society that Plaintiff would in reasonable probability, have received from Maurice, had he lived.

c.       Mental Anguish suffered by the surviving parent as a result of the death of Maurice, including but not limited to the emotional pain, torment, and suffering that Plaintiff would, in reasonable probability, experience from the death of Maurice Donald Johnson; Loss of household services; and

e.       Loss of Inheritance: the earnings, if any, of the Maurice in excess of the amount he would have used for the support of himself and his family, and in which reasonable probability would have been added to his estate and left to the Parent at his natural death had he lived.

In addition, Defendants are liable for compensatory and exemplary damages arising from their negligence and gross negligence.

## ATTORNEY'S FEES

Plaintiff is entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. 49 U.S.C. § 1988. Plaintiff thereby requests that the Court and jury award any attorney's fees and expenses Plaintiff incurs.

## JURY DEMAND

Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV. P. 8(b).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request that Defendants be cited to appear and answer herein, and that Plaintiff have judgment against Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court; exemplary damages; pre-

judgment interest; post-judgment interest, costs of court, attorney's fees and expenses and all other relief

to which Plaintiff is justly entitled, at law or in equity.

Respectfully submitted,

*Marcella Holloman*

Marcella Holloman
3531 Elmora Avenue
Baltimore, Maryland 21213