IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| MARCELLA HOLLOMAN, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:14-cv-01516-CCB |
| MAYOR STEPHANIE RAWLINGS-BLAKE, et al., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MAYOR AND CITY COUNCIL OF BALTIMORE'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Baltimore City Mayor Stephanie Rawlings-Blake, Baltimore City Council President Bernard "Jack" Young, Councilman James B. Kraft, Councilman Brandon Scott, Councilman Robert Curran, Councilman Bill Henry, Councilwoman Rochelle "Rikki" Spector, Councilwoman Sharon Green Middleton, Councilman Nick Mosby, Councilwoman Helen Holton, Councilman William "Pete" Welch, Councilman Edward Reisinger, Councilman William Cole, Councilman Carl Stokes, Councilman Warren Branch, and Councilwoman Mary Pat Clarke (collectively "Mayor and City Council"), by undersigned counsel, submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff initiated this action on May 8, 2014 on behalf of the Estate of Mr. Maurice Donald Johnson ("Mr. Johnson"), Plaintiff's son. Mr. Johnson died as a result of gunshot wounds on May 19, 2012. Plaintiff's Amended Complaint, ECF Paper No. 6, was filed on June

2, 2014. This is a civil rights action brought pursuant to 42 U.S.C. §1983 ("1983") alleging

violations of the Constitution of the United States of America and Maryland State Law.  The

Amended Complaint alleges that Baltimore Police Department ("BPD") officers deprived Mr.

Johnson of his rights guaranteed by Amendments IV, V, VIII, and XIV of the Federal

Constitution, the Americans with Disabilities Act of 1990 as amended 42 U.S.C. §12101 *et. seq.*,

the Rehabilitation Act as amended 29 U.S.C. §701 *et. seq.*, and Maryland law by engaging in an

unreasonable search and seizure, resulting in the personal injury and wrongful death of Mr.

Johnson.

   The Mayor and City Council have now filed a Motion to Dismiss the Complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  As explained in more

detail below, the Complaint fails to state a "plausible" §1983 *Monell* claim[1] against the Mayor

and City Council, *i.e.*,  it fails to state sufficient facts demonstrating that an official policy or

custom is the "moving force" behind the alleged violation of Mr. Johnson's constitutional rights.

Second, as a matter of Maryland law, the BPD is a State agency, not an agency of the Mayor and

City Council.  The officers of the BPD are not agents, servants, or employees under the direction

of the Mayor and City Council.

   Thus, the Mayor and City Council does not have legal control over the BPD, its policies,

practices, customs, officers, or employees.  Absent such control, which is absent as a matter of

law, none of the allegations contained in the Amended Complaint ascribing actions and/or

inactions to the BPD and its officers provide a basis for any kind of liability against the Mayor

and City Council.  Baltimore City's charter explicitly prohibits the Mayor and City Council from

---

[1]  A "§1983 *Monell* claim" refers to the well established Supreme Court precedent authorizing civil rights lawsuits under §1983 against municipalities, where an official policy or custom of the municipality causes a constitutional injury.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

interfering with the power vested in the Police Commissioner to run the BPD. Accordingly, the Court should dismiss the Amended Complaint, in its entirety.

## STATEMENT OF FACTS

Plaintiff alleges that Mr. Johnson was shot to death by Defendants Officer Paul Markowski ("Ofr. Markowski") and Officer Gregory Bragg ("Ofr. Bragg") on May 19, 2012 at 5:17 p.m. at 3531 Elmora Avenue, Baltimore, Maryland 21213, the home he shared with his mother. ECF Paper No. 6, 9:16-17; 10:1-3. Plaintiff alleges that Mr. Johnson was diagnosed with bi-polar disorder, received disability benefits as a result of the disorder, and that the existence of his illness was contained in the Maryland State database of persons known to possess mental disorders. ECF Paper No. 6, 9:17-21. Ofr. Markowski allegedly was aware of Mr. Johnson's disorder from prior interactions with him and Mr. Johnson's entry in the Maryland State database of persons known to possess mental disorders. ECF Paper No. 6, 9:23-24. Plaintiff alleges that Ofr. Markowski and Ofr. Bragg failed to follow BPD policies further provoking the situation, which resulted in the death of Mr. Johnson in the living room of Plaintiff's home. ECF Paper No. 6, 9:26-29.

It is alleged that at approximately 5:00 p.m. Mr. Johnson arrived at the residence visibly upset and Plaintiff wanted to have him transported to the hospital for treatment. ECF Paper No. 6, 10:20-23. Mr. Johnson allegedly refused to comply with Plaintiff's desire to have him seek professional intervention. ECF Paper No. 6, 10:23-24. Plaintiff allegedly called 911 at approximately 5:05 p.m. to request both the BPD and Baltimore Fire Department be dispatched to the residence to assist her in having Mr. Johnson transported to the hospital for treatment. ECFD Paper No. 6, 10:27-28.

It is further alleged that on May 19, 2012 Ofr. Markowski and Ofr. Bragg were working on duty as BPD officers, in full departmental uniform, when they responded to a 911 call from 3531 Elmora Avenue, Baltimore, Maryland 21213. ECF Paper No. 6, 10:5-9; 10:12-16. The complaint concludes that both officers were acting under color of State law and within the course and scope of their employment with the City. ECF Paper No. 6, 10:9-10; 10:16-17. It is alleged that at 5:17 p.m. Ofr. Markowski arrived at 3531 Elmora Avenue and Plaintiff informed him that she had gained control of the situation and that Mr. Johnson was in the back yard. ECF Paper No. 6, 9:30-11: 1. Plaintiff alleges that Ofr. Markowski then entered Plaintiff's home via the front door. ECF Paper No. 6, 11:1-2. Plaintiff further alleges that she informed Ofr. Markowski that Mr. Johnson was "o.k." or "he was fine" and suggested that Ofr. Markowski wait for his "back-up" or the next responding officer, per BPD policy. ECF Paper No. 6, 11:4-7. Plaintiff alleges that the next arriving officer is Ofr. Bragg. ECF Paper No. 6, 11:7-8.

Plaintiff alleges that Ofr. Markowski paid "no mind" to Plaintiff's suggestion and continued to enter the residence, began to "look around" at the contents of the residence, observing portraits hanging on the wall, the floors, and ceiling until arriving in the kitchen area. ECF Paper No. 6, 11:10-12. Plaintiff further alleges that she again informed Ofr. Markowski that he was to await the arrival of the next responding officer to the location and requested that he wait outside in the front area of the residence. ECF Paper No. 6, 11:15-16. It is alleged that Plaintiff was employed as a professional healthcare provider to people with various disabilities, including mental disorders, and that she has experience through practical application of her training to recognize potential mental health crisis when they occur. ECF Paper No. 6, 11:16-20. Plaintiff further alleges that she has been trained in the policies of the BPD regarding incidents that require contact between officers and patients. ECF Paper No. 6, 11:20-22.

4

Allegedly Ofr. Markowski continued to the location of the rear door of the residence, which was closed and locked, and called Mr. Johnson's name. ECF Paper No.6, 11:24-26. In response Mr. Johnson knocked on the door to speak to Ofr. Markowski. *Id.* Plaintiff alleges that Ofr. Bragg made his way to Ofr. Markowski's location and undid the safety strap on his holster. ECF Paper No. 6, 11:26-28. Plaintiff further alleges that she told Ofr. Bragg "not to shoot my son" and Ofr. Bragg proceeded to unlock the rear door and opened it. ECF Paper No. 6, 11:28-30. Plaintiff alleges that Ofr. Markowski grabbed Mr. Johnson using both hands by the left arm and Ofr. Bragg similarly grabbed Mr. Johnson's right arm. ECF Paper No. 6, 12:1-2. The complaint goes on to concludes that there was no reasonable suspicion or probable cause that Mr. Johnson had committed a crime. ECF Paper No. 6, 12: 2-3.

Plaintiff alleges that Ofr. Markowski, without provocation or justification, physically attacked Mr. Johnson. ECF Paper No. 6, 12: 3-4. The complaint concludes that, as allowed by law, Mr. Johnson attempted to resist unlawful force. ECF Paper No. 6, 12:4-5. Plaintiff further alleges that Ofr. Markowski and Ofr. Bragg had not witnessed Mr. Johnson engage in any illegal conduct before they approached and attacked him. ECF Paper No. 6, 12:8-9. It is alleged that Mr. Johnson did not make any sudden movements or gestures that could have been interpreted as aggressive or threatening, that Mr. Johnson did not say or do anything that would cause the officers to fear imminent bodily harm, and that Mr. Johnson had no intent to commit any violation of law or to harm Ofr. Markowski, Ofr. Bragg, or any other person. ECF Paper No. 6, 12:8-13. It is further alleged that Ofr. Markowski and Ofr. Bragg could clearly see that Mr. Johnson was not armed and had no reason to believe that he posed a danger to himself or any other person. ECF Paper No. 6, 12:13-15.

Plaintiff alleges that Mr. Johnson was able to break free and a struggle ensued between him and Ofr. Markowski which eventually led to them both falling to the floor.  ECF Paper No. 6, 12:19-20.  It is alleged that Mr. Johnson was able to get on top of Ofr. Markowski and that Ofr. Markowski then reached for his service weapon and discharged the weapon twice at point blank range, striking Mr. Johnson in the chest.  ECF Paper No. 6, 12:20-23.  It is further alleged that Ofr. Bragg also discharged his service weapon striking Mr. Johnson in the back.  ECF Paper No. 6, 12:22-23.  Plaintiff alleges that Mr. Johnson fell forward and made a sound which represented his last breath and expired at 5:18 p.m.  ECF Paper No. 6, 12:26.  Plaintiff further alleges that the time interval between the officers arriving and Mr. Johnson becoming the decedent was approximately one minute or less.  ECF Paper No. 6, 12:27-28.

## LEGAL STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal for failure to state a claim upon which relief can be granted.  A Rule 12 (b)(6) motion challenges the legal sufficiency of the complaint.  *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).  The legal sufficiency of the complaint is determined by evaluating whether the complaint meets the standards for pleadings as set forth in Federal Rules of Civil Procedure 8, 9, 10, 11, and 12(b)(6).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

The Supreme Court has specifically instructed lower federal courts to use a two prong approach in analyzing the sufficiency of a pleading under Rule 8: (1) the principle that the court should accept the truth of factual allegations is inapplicable to legal conclusions; and (2) a complaint will only survive a Rule 12(b)(6) motion where it states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-556 (2009).  "Threadbare recitals of the elements of a cause of action, supported by

6

mere conclusory statements, do not suffice." *Iqbal*, 556 U.S, at 678; *see also Giacomelli*, 588 F.3d at 93 (*quoting, Twombly*, 550 U.S. at 555)("To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'")

Following the Supreme Court instructions under the first prong of the Rule 8 test, the Fourth Circuit has found that "we need not accept the legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Glassman v. Arlington County Virginia, et al.,* 628 F.3d 140, 146 (4th Cir. 2010); *quoting Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted). Put another way, under the first prong of the Rule 8 test "…a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Giacomelli,* 588 F.3d at 193 (*quoting Iqbal*, 556 U.S. at 678). The Court goes on to state, *"[t]his approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Id.* (quoting *Twombly*, 550 U.S. at 557)(internal quotation marks omitted)(emphasis added).

The rationale behind the first prong of the Rule 8 test is clear cut and unambiguous, *i.e.,* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679; *Giacomelli*, 588 F.3d at 193. It is for this reason that the Supreme Court and the Fourth Circuit has specifically rejected as insufficient under Rule 8, averments that offer nothing more than naked conclusions, characterizations,

opinions, mere speculation or legal argument. *See e.g. Iqbal*, 129 S.Ct. at 1951-1952 (rejecting various conclusory allegations that the Attorney General of the United States had discriminatory policy of detaining Arab-Americans and Muslims for questioning after the September 11, 2001 terrorist attacks); *Twombly*, 550 U.S. 556-557 (in rejecting anti-trust claim under §1 of the Sherman Act, the Supreme Court noted "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Glassman*, 628 F.3d at 145-149 (Fourth Circuit rejecting various allegations as too conclusory to show that Arlington County violated the Establishment Clause of the First Amendment when it entered with joint business ventures with a Baptist church located in the county); *Giacomelli*, 588 F.3d at 194-195 (Fourth Circuit rejecting conclusory allegations that Mayor of Baltimore City violated former Police Commissioner's Fourth Amendment rights and his rights under 42 U.S.C. §1981, when the Mayor terminated the Police Commissioner and seized certain work related items from him.)   In short, it is the speculative or conclusory nature of allegations that disqualifies them from a presumption of truth, not because they are in-artfully pled, or that such allegations are "unrealistic" or "nonsensical." *See Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical"); *Glassman*, 628 F.3d at 145 ("While these statements are not inappropriate, they nonetheless cannot be taken as a basis to support a plausible claim.").

Once, a pleading is stripped of its allegations that are not entitled to truth, the second prong requires lower federal court to determine if the remaining factual allegations state a plausible claim for relief. *See Iqbal* 556 U.S. at 679-687; *Twombly*, 550 U.S. at 555-570; *Glassman*, 628 F.3d at 145-150; *also Giacomelli*, 588 F.3d at 194-197.  Thus, where the well

pled facts of a pleading, "… do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown –'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; *Giacomelli*, 588 F.3d at 193; *see also Glassman*, 628 F.3d at 145, (*citing Twombly*, 550 U.S. at 557)("To determine whether a plausible claim has been asserted, we consider the *factual* allegations of the complaint to determine whether they plausibly show an entitlement to relief.")(emphasis in original).  In sum, a pleading does not state a plausible claim for relief under Rule 8 if it contains nothing more than "…an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

As shown, below the Amended Complaint fails to allege sufficient facts to state a claim for relief, under any theory, against Defendants Mayor and City Council.

## ARGUMENT

### A.   PLAINTIFF FAILS TO STATE A §1983 *MONELL* CONSTITUTIONAL CLAIM AGAINST THE MAYOR AND CITY COUNCIL AS A MATTER OF LAW

The Complaint fails to allege sufficient facts meeting the basic elements of a §1983 *Monell* claim against the Mayor and City Council[2], *i.e.*, the Complaint fails to allege facts showing that a Mayor and City Council policy or custom was "the moving force" behind a violation of Mr. Johnson's Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Additionally, the BPD is a State agency, not an agency of the Mayor and City Council.  Thus, the

---

[2]  Plaintiff has not specifically alleged that this suit is against Defendants in their official capacity; nonetheless, it is well settled that an official capacity suit against a government official under §1983, in all respects, is a suit against the government entity itself.  *See Kentucky v. Graham,* 473 U.S. 159, 165, 166 (1985)("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law... Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" …  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity…It is *not* a suit against the official personally, for the real party in interest is the entity.")(citations omitted).

officers of the BPD are not agents, servants, or employees under the direction of the Mayor and City Council.

It is well settled law that any viable §1983 *Monell* claim has two elements: (1) the municipality had an unconstitutional "policy or custom"; and (2) the "policy or custom" caused a violation of the plaintiff's constitutional rights.  *See e.g., Connick v. Thomspon*, 2011 U.S. LEXIS 2594, *17; 131 S. Ct. 1350, 1359 (2011); *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't. of Social* Services, 436 U.S. 658, 694 (1978); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*,   547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987); *Milligan v. Newport News,* 743 F.2d 227, 229 (4th Cir. 1984).

In this regard, a party may allege facts showing that a municipality has an unconstitutional "policy" or "custom" in one of four ways: (1) a formal policy, regulation or ordinance; (2) an express decision of an official with "final policymaking authority"; (3) the municipality's  failure to train its employees, such that the municipality was "deliberately indifferent" to the constitutional rights of its citizens; or (4) a "persistent and widespread practice" of unconstitutional conduct by municipal employees so as to become a "custom or usage" of the municipality. *See Connick*, 131 S.Ct. at 1359; *Brown*,  520 U.S. at 403-404; *Lytle*, 326 F.3d at 471; *Carter*, 164 F.3d at 217; *Spell*, 824 F.2d at 1386; *Milligan*, 743 F.2d at 229.

Plaintiff's allegations attempt to establish §1983 liability on behalf of the Mayor and City Council via several theories.   Plaintiff alleges that Mr. Johnson's rights were violated by the Mayor and City Council:

> (A)  By using excessive and deadly force in the course of Officer Markowski's and Officer Bragg's attempt to seize Maurice, in violation of the Fourth

Amendment and its reasonableness standard. Plaintiff pleads that Maurice was unlawfully shot and killed. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable;

(B) By failing to provide medical attention, where it was clearly necessary and required by law; and

(C) By failing to provide supervision and/or proper training to prevent such incidents of excessive force.

ECF Paper No. 6, 13:12-22.

Plaintiff further alleges that the Mayor and City Council are liable as a result of "failing to supervise and train its police officers, and for overlooking and covering up officer misconduct. In addition, the City had a general policy, pattern and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations." ECF Paper No. 6, 15:5-9. Plaintiff references four examples of citizens who died while BPD officers were on scene. ECF Paper No. 6, 15:28-16:20. Only one alleged instance is a fatal shooting. Moreover, none of these instances are factually similar to the facts in the instant case; where officers are dispatched to assist in a medical transport of an individual with a mental disorder that is being detained by a family member on the property.

Plaintiff additionally alleges that Defendant Mayor and City Council are liable for the constitutional torts of Ofr. Markowski and Ofr. Bragg because they sanctioned the following customs, practices, and policies:

(A) Using excessive, and oftentimes deadly force, to carry out otherwise routine arrests or stops;

(B) Using deadly force when such force is not necessary or permitted by law;

(C) Ignoring the serious need for training and supervision of its officers in regards to the use of force;

(D)  Failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control;

(E)  Failing to adequately supervise and/or observe its officers;

(F)  Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of deadly force;

(G)  Failing to discharge officers who have shown a pattern or practice of using excessive force;

(H)  Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

ECF Paper No. 6, 17:4-24.

### 1.   PLAINTIFFS CLAIM FAILS BECAUSE, AS A MATTER OF LAW, THE MAYOR AND CITY COUNCIL DO NOT CONTROL THE BPD OR ITS OFFICERS.

As a matter of law, the Mayor and City Council cannot be "deliberately indifferent" to the actions and/or inactions of BPD officers not controlled by the Mayor and City Council. None of the allegations contained in the Amended Complaint can state a viable claim against the City, vicariously or directly, due to the fact that Ofr. Markowski and Ofr. Bragg are not agents, servants, or employees of the Mayor and City Council.  Moreover, the Mayor and City Council has no legal role in setting BPD policy.  As a matter of long-standing Maryland law, the BDP is an agency of the State of Maryland, not the City of Baltimore. PUBLIC LOCAL LAWS OF MARYLAND, Art. 4, §16-2 (a) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland."); *Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 23 (2008) (noting that "the Baltimore Police Department is not an agency of the City of Baltimore and has not been for some time"); *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 669-70 (1988) (emphasis added) ("*As a*

*matter of Maryland law, Baltimore City is simply not [the officers'] employer for tort liability purposes.*"). The Baltimore Police Department was removed from the control of the City and transferred to the State in 1860, *Baltimore v. State*, 15 Md. 376 (1860); H. H. Walker Lewis, *The Baltimore Police Case of 1860*, 26 MD. L. REV. 215 (1966), and it remains a State agency today. Without an agency relationship and without any Mayor and City Council control of the BPD, none of the allegations in the Amended Complaint states a claim upon which relief can be granted.

This Court stated clearly in *Chin v. City of Baltimore*, 241 F.Supp.2d 546, 549 (D. Md. 2003), when it dismissed both state law and §1983 claims, that "*as a matter of Maryland law, the Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions.*" (emphasis added). In the decade since the *Chin* ruling, this Court has repeatedly affirmed its reasoning in similar cases. *See, e.g., Bradley v. Balt. Police Dep't,* 887 F. Supp. 2d 642, 646-48 (D. Md. 2012) (dismissing the City because it "does not exert sufficient control over the BPD to be subject to liability for the latter's actions," discussing numerous D. Md. cases that did the same, and noting that the few cases that failed to dismiss on this ground "may have [improperly] merged" 11th Amendment immunity analysis with the separate analysis of sufficient legal control to be liable under § 1983); *see also Jackson v. Balt. Police Dep't*, 2013 U.S. Dist. LEXIS 38463, *11-13 (D. Md. Mar. 15, 2013) (unpublished) (dismissing because "the City does not exert sufficient control over the [Police] Department" and the Complaint set forth "only conclusory allegations" of such control); *Creasy v. Mayor of Baltimore*, 2012 U.S. Dist. LEXIS 41659, *6 (D. Md. Mar. 26, 2012) (unpublished) (dismissing because the "Police Department is an agency of the State, not an agency of the City of Baltimore and thus not within the control of the Mayor"); *Brown v. Balt.*

*Police Dep't*, 2011 U.S. Dist. LEXIS 147219, *15-19 (D. Md. Dec. 21, 2011) (unpublished) (dismissing because "BPD officers are not City employees and the City does not exercise control over the BPD and its employees"); *Hamilton v. Mayor of Baltimore*, 2008 U.S. Dist. LEXIS 123793, *4-6 (D. Md. Apr. 23, 2008) (unpublished) (dismissing on other grounds but noting that "had she properly pled the claims, her § 1983 claim against the City could not proceed because the City does not exercise control over BPD").

The Supreme Court has stated that State law ultimately determines whether the Mayor and City Council can be deemed a policy maker of the BPD for purposes of Federal law, so we must turn to state authorities. *See St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ("We begin by reiterating that the identification of policy making officials is a question of state law"). The Maryland Court of Appeals has stated in no uncertain terms that "notwithstanding the Mayor's role in appointing and removing the City's Police Commissioner, the Baltimore City Police Department is a state agency" and not an agency of the City. *Mayor & City Council v. Clark*, 404 Md. 13, 28 (2008). As the Court stated in *Clark*, the City simply "has no power" over the BPD. *See id.* at 26. Maryland decisions "have been consistent and unequivocal" in this regard, "that Baltimore City should not be regarded as the employer of members of the Baltimore City Police Department for purposes of tort liability." *Id.* at 26-27 (quoting *Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 668-69 (1988)); *see also Taxicab Company of Baltimore City v. City of Baltimore*, 118 Md. 359, 367 (1912) (noting that BPD officers "are paid by the City, it is true . . . but are not appointed as the agents or officers of the City government" and that while the City may pass regulations, "the enforcement of the regulation is entirely dependent upon a separate and independent police department, over which the City has no control").

Perhaps the most detailed explanation of the unique relationship between the Mayor and

City Council and the entity that provides police protection over the territory that the City governs

comes from a Court of Special Appeals case, *Baltimore Police Dep't v. Cherkes*, 140 Md. App.

282 (2001).   In that case, the three judge appellate panel reviewed Article 16 of the Code of

Public Local Laws, the "comprehensive set of local laws passed by the [Maryland State] General

Assembly that creates the [BPD] and governs its operation," details the dictates set forth for the

BPD by the State and the powers given to the Commissioner, and then contrasts the State's and

the Commissioner's plenary powers with the Baltimore City Charter's utter lack of authority

over the BPD; noting that the Charter expressly forbids the City from interfering with the

Commissioner in exercising his powers.  *Id.* at 310-12.  As the Court explained:

> Article 16 . . . "constitutes and establishes" the BCPD as an "agency and
> instrumentality of the State of Maryland" (§ 16-2(a)); describes its duties,
> both inside and outside the City limits (§ 16-2 (a) and (b)); enumerates the
> powers and duties of its officers (§ 16-3); establishes the office of the
> Police Commissioner . . . (§§ 16-4 and 16-6); defines the Commissioner's
> duties (§ 16-7); and prescribes the means for his appointment and removal
> (§ 16-5). While conferring on the Mayor of Baltimore the power to
> appoint the Commissioner, it directs what considerations the Mayor shall
> make in exercising that power (§ 16-5(a)).
>
> Article 16 further governs the means by which the Commissioner shall
> prepare a budget, and provides that the budget shall be considered by the
> City Board of Estimates . . . and makes special provisions concerning the
> number of members of the department and their compensation, including
> payment for witness fees and overtime (§ 16-8). It goes on to spell out
> comprehensive provisions governing labor relations and collective
> bargaining (§ 16-8A); establishing disciplinary and grievance procedures
> for officers (§§ 16-11 and 16-12); authorizing the Commissioner to pay
> funds for legal defense costs for officers in civil and criminal cases, with
> the approval of the Attorney General (§ 16-13); and providing that the
> Administrative Procedure Act applies to disciplinary hearings . . . (§ 16-
> 11(e)).
>
> In addition, Article 16 creates a special fund for payment of disability,
> retirement, and pension payments, as well as payments for widows, and
> directs the City in certain circumstances to make appropriations for the

fund. (§§ 16-19 through 16-39). Finally, it establishes a Civilian Review Board to hear complaints against police officers respecting abusive language, harassment, and use of excessive force, and prescribes the composition of the board and the procedure for the making and resolution of complaints. (§§ 16- 41 through 16-54).

By contrast, the Baltimore City Charter, by which the powers, structure, and functions of the City government are defined, makes no mention of the BCPD, a police department, or any police force. Indeed, the sole reference to the Commissioner is by way of limitation of the City's powers. In Article II . . . "[the Charter provides] that *no ordinance of the City or act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner*." Baltimore City Charter, Art. II, section 27. The only other reference to police or the Commissioner in the Baltimore City Charter is in respect to the police pension fund.

*Id*. (emphasis added).

Thus, it is abundantly clear that while the State can and has set forth rules and regulations for such internal BPD functions as training and discipline (*see, e.g.,* PUBLIC LOCAL LAWS OF MARYLAND, Art. 4, § 16-11 "Members – disciplinary proceedings"), the City is entirely lacking in such powers. Indeed, since the powers over the BPD that the State expressly bestowed upon the Commissioner include "all powers, rights and privileges attending the responsibility of management" and the power "[t]o regulate attendance, conduct, training, discipline and procedure for all members of the Department and to make all other rules, regulations and orders as may be necessary . . ." *Id*. at §§ 16-7 and 16-7(8).

Under Maryland law, the Mayor and City Council does not have plenary power to discipline members of the BPD. *See* Public Local Laws of Baltimore City §§16-7(7); § 16-11. Therefore, even if arguendo, Mayor and City Council had notice of a policy of custom of BPD officers utilizing excessive or deadly force when unwarranted, under Maryland law such notice would not have provided even the BPD Commissioner with the power to reassign, dismiss or

remove Ofr. Markowski and Ofr. Bragg from the Department without a hearing governed by the

Maryland Administrative Procedures Act. *See* Public Local Laws of Baltimore City, § 16-11.

Pursuant to Maryland law, law enforcement officers, including these officer Defendants,

are entitled to the protections of the Law Enforcement Officers Bill of Rights ("LEOBR"), which

provides procedural guarantees when adverse employment decisions are taken on the basis of

disciplinary matters. *See Allgood v. Somerville*, 43 Md. App. 187 (1979); Maryland Annotated

Code, Public Safety §§ 3-101-3-103, formerly Annotated Code of Maryland Article 27, §§ 727-

734D.

The Court of Appeals stated the legislative scheme of the LEOBR to be as follows:

> Any law-enforcement officer covered by the Act is entitled to its
> protections during any inquiry into his conduct which could lead to
> the imposition of a disciplinary sanction. Implicit in § 728's
> provision that "[w]henever a law-enforcement officer is under
> investigation . . . by a law-enforcement agency, for any reason
> which could lead to disciplinary action, demotion or dismissal" is
> the assumption  that a disciplinary-type complaint has been lodged
> against the officer -- a complaint which, except as otherwise
> provided in the Act, will be investigated by the officer's law-
> enforcement agency as a precondition to any recommendation for
> the imposition of a disciplinary sanction. The procedural
> safeguards afforded to the officer during the official inquiry into
> his conduct constitute the heart of the Act's protections. *See Abbott
> v. Administrative Hearing Board*, 33 Md. App. 681, 366 A.2d 756
> (1976). If the investigation results in a recommendation that the
> officer be disciplined for his conduct, he is entitled to a hearing
>
> under § 730. *Moore v. Town of Fairmount Heights*, 285 Md. 578,
> 403 A.2d 1252 (1979). **If the hearing board recommends the
> imposition of a disciplinary sanction, the chief of police makes
> the final determination whether to impose punishment.** If he
> discharges or otherwise disciplines the officer, § 732 authorizes the
> taking of an appeal to the court, pursuant to Maryland Rule B2
> (appeals from administrative agencies). [Footnotes omitted]. [288
> Md. at 451-52].

(emphasis added) *Montgomery County Dep't of Police v. Lumpkin*, 51 Md. App. 557, 564-565 (1982) (quoting *DiGrazia v. County Executive for Montgomery County*, 288 Md. 437, 418 A.2d 1191 (1980)).

Consequently, even the BPD Commissioner could not have simply dismissed, removed, or transferred the officer Defendants without due process. As stated above, any imposition of punishment at the conclusion of the administrative trial board hearing would be within the sole discretion of the BPD Commissioner, not the Mayor and City Council.

The Mayor and City Council is legally forbidden by its own Charter from attempting to meddle in these internal BPD affairs, as that would "interfere with the powers of the Police Commissioner" in direct violation of the express edicts of the Baltimore City Charter, Art. II, §27 discussed above.  As the City has no legal authority to direct the BPD and an express prohibition against interfering with the person who does have such authority is written into the Charter, Maryland law makes it perfectly clear that, in the words of Maryland's highest state court, the City "has no power" over the BPD. *Clark*, 404 Md. at 26.

Although the Amended Complaint makes erroneous legal conclusions that suggest the City controls the BPD such conclusions of law couched as facts do not constitute allegations sufficient to survive a motion to dismiss. *See, e.g., Twombly*, 550 U.S. at 570.  When, as here, the law clearly shows that the legal relationship between two entities is different than the relationship asserted in a complaint, the complaint's assertions do nothing to change the law and cannot be given deference at the expense of the established law.  Even if a complaint properly alleges that individual actors within an entity took actions beyond the legal authority of the entity; which, to be clear, the Amended Complaint in this case does not allege of the Mayor and City Council, such actions would be *ultra vires* and not binding upon the entity.  Furthermore, in

this Amended Complaint, such an allegation would be a logical absurdity, as the accusation against the Mayor and City Council is that it failed to act to prevent this tragedy, but since the law does not give the City the authority to act in a manner that allegedly could have prevented it, the Amended Complaint would be seeking to hold the Mayor and City Council liable for failing to act *ultra vires*.  It makes no sense to hold an entity liable for failing to act beyond its legal authority, for indeed, every entity would thereby be equally subject to such liability.

As discussed in detail above, the laws of Maryland, as well as the precedent of both this Honorable Court and Maryland state courts, make it abundantly clear that the BPD is not an agency of the Mayor and City Council.  Moreover, that the Mayor and City Council simply does not control the BPD or its officers.  The Amended Complaint cannot allege its way around that clear matter of long standing Maryland law.  As all the claims in the Amended Complaint require either an agency relationship or a legal control relationship in order to implicate the Mayor and City Council, neither of which exists as a matter of law, no claim has been stated upon which relief can be granted as to the Mayor and City Council; thus, the Mayor and City Council should be dismissed from this action.

2. **PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT A MAYOR AND CITY COUNCIL POLICY OR CUSTOM WAS THE "MOVING FORCE" BEHIND THE ALLEGED CONSTITUTIONAL VIOLATION**

It is equally well settled law that the second element of a §1983 *Monell* claim (causation) is a high hurdle, *i.e.*, a complaining party must allege facts showing that the allegedly unconstitutional policy or custom was the "moving force" behind the violation of his or her rights.  *See Connick*, 131 S.Ct. at 1359; *Brown*, 520 U.S. at 404; *Carter*, 164 F.3d at 218; *see also Lytle*, 326 F. 3d at 471-474; *Spell*, 824 F.2d at 1391; *Milligan*, 743 F.2d at 230.  It is for this reason that federal courts must apply *rigorous standards* of culpability and causation to the

party's §1983 *Monell* claim, where a party is contending that the municipality did not directly cause the constitutional injury, *i.e.*, that either "inadequately training" or "widespread and persistent constitutional abuses" caused the violation of the party's constitutional rights. *See Connick*, 131 S.Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train")(citations omitted); *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."); *see also Lytle*, 326 F.3d at 471-474; *Carter*, 164 F.3d at 218-220; *Spell*, 824 F.2d at 1387-1388.

It follows that it is not enough for §1983 *Monell* liability that the alleged unconstitutional "policy or custom" was the "but for" cause of a party's injuries, as federal courts must prevent §1983 *Monell* claims from impermissibly slipping into the realm of *respondeat superior* liability. *See Brown*, 520 U.S. at 410 ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); *Carter* 164 F.3d at 218 ("We must bear in mind, however, that no municipality can 'be held liable under § 1983 on a *respondeat superior* theory.'… A plaintiff's theory is most likely to slip into that forbidden realm when she alleges municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom.")(internal quotes and citations omitted); *see also Spell*, 824 F.2d at 1388.

Accordingly, in order to keep a §1983 *Monell* claim from collapsing into *respondeat superior* liability, federal courts require §1983 *Monell* plaintiffs to allege sufficient facts showing

that the municipality was "deliberately indifferent" to the specific risk of constitutional injury alleged in the pleadings. *See e.g., Connick*, 131 S.Ct. at 1359; *Brown*, 520 U.S. at 411; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Lytle*, 326 F. 3d at 473-474; *Carter*, 164 F.3d at 318-320; *Spell*, 824 F.2d at 1390-1391.   Deliberate indifference is an extremely high standard of fault, *i.e.*, mere negligence and/or even gross negligence is *never* sufficient to meet the standard. *See Connick* 131 S.Ct. at 1160 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.")(citation omitted); *Brown*, 520 U.S. at 407 (a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences... A showing of simple or even heightened negligence will not suffice.); *Riddick v. School Board City of Portsmouth, Va.*, 238 F.3d 518, 524 (4th Cir. 2000)("A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.'")(citation omitted)(emphasis in original).

Instead, a §1983 *Monell* plaintiff must not allege facts sufficient to merely show that the municipality knew of the particular risk of constitutional injury, but that the municipality *actually drew the inference* that its response to the risk was inappropriate in light of that risk. *See Brown*, 420 U.S. at 410 ("As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); *Riddick*, 238 F.3d at 525-526 ("Thus, the evidence simply does not support a finding that the school officials investigating the 1989 allegation ignored 'the

potential consequences of known risks.'")(citations omitted); *Carter*, 164 F.3d at 220 ("At best

Carter's two decade survey of police conduct offers only one other uninvestigated complaint of

unlawful arrest in the City of Danville—and that resulting from apparently reasonable error. This

evidence fails to show that the City of Danville is deliberately indifferent to the relevant rights of

its citizens."); *see also*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)(Supreme Court explaining

the "deliberate indifference" standard under the Eight Amendment: "…the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.").

In deciding Rule 12(b)(6) motions to dismiss, Courts in the Fourth Circuit have applied a

*Twombly-Iqbal* analysis to § 1983 *Monell* claims.  In *Fernandez v. Montgomery County, MD*,

2010 U.S. Dist. LEXIS 121215 (D. Md. 2010), the Honorable Judge Alexander Williams, Jr.

articulated the analysis as follows:

> Recent Supreme Court decisions have created a two-part framework for analyzing motions to dismiss for failure to state a claim. First, the Court must sort the allegations in the Complaint into two categories: genuine factual allegations that are entitled to deference, on the one hand, and allegations that are mere threadbare recitals of the elements of a cause of action, on the other.  Taken alone, the allegation that the individual officers' actions resulted from the County's policy or custom of discrimination and/or indifference to training its officers fails at the first step of the *Twombly-Iqbal* analysis because it is little more than a bare assertion that a legal element (*i.e.*, the policy-or-custom element) is met.

*Id.* at *8 (internal quotation and citation omitted); *see also Chestnut v. Prince George's County*,

2011 U.S. Dist. LEXIS 27391, *7 (D. Md. 2011) (Finding that the plaintiff's *Monell* allegations

were "threadbare recitals of the elements of a cause of action supported by mere conclusory

statements, thus failing to satisfy the pleading requirements of *Ashcroft v. Iqbal*….").

The Honorable Judge Williams continued to explain that to get past the first step of the

*Twombly-Iqbal* analysis, the allegations must offer "concrete factual material...instead of merely

reciting a legal conclusion." *Fernandez*, 2010 U.S. Dist. LEXIS 121215 at *9.  If the allegations

move the analysis beyond the first step, the second step is to determine whether the complaint

"plausibly establish[es] the inference that a policy or custom of the County is responsible for the

actions of the individual Defendants." *Id.*  Furthermore, the Court dismissed the notion that such

an analysis subjects plaintiffs to a heightened pleading standard:

> Plaintiff also contends that section 1983 claims are not subject to a
> heightened pleading standard.   However, the Court is simply
> applying the generally-applicable pleading standard of Federal
> Rule of Civil Procedure 8(a), as interpreted by the Supreme Court
> in *Iqbal* and *Twombly*; the Court is not fashioning a special form of
> heightened pleading for section 1983 claims.

*Id.*  at *10 (emphasis added); *see also Barnes v. Montgomery County, Md*, 2010 U.S. Dist.

LEXIS 37279, *9-10 (D. Md. 2010) (Ruling that a complaint alleging a § 1983 *Monell* claim for

failure to train police officers was inadequate because the plaintiff "fail[ed] to specify what the

deficient training policy or custom is or to provide facts that demonstrate the County made a

deliberate or conscious choice to inadequately train its officers.").

Likewise, this Court has dismissed a § 1983 *Monell* claim where the complaint failed to

provide sufficient facts and circumstances that would give rise to a plausible inference of a

custom, pattern, or practice. *See Miller v. Hamm*, 2011 U.S. Dist. LEXIS 141 (D. Md. 2011).  In

that case, the plaintiff alleged that the BPD had a custom, policy, or practice of retaliating against

officers who exercise their First Amendment rights and failing to provide name-clearing hearings

to which officers were entitled. *Id.* at *50-51.  In dismissing the plaintiff's claim, this Court

held:

> These allegations are too generalized to state a claim for municipal or official-capacity liability that is plausible, rather than merely possible. *Miller does not describe the circumstances surrounding the alleged other acts of retaliation and denials of name-clearing hearings so as to raise an inference that they were the result of a common policy or practice established by BPD policymakers. Without specific factual allegations, the court need not accept Miller's bald assertions of the existence of policies, practice, and customs.*

*Id.* at *51 (emphasis added).

Finally, the Fourth Circuit has recently upheld the dismissal of §1983 *Monell* claims by the Honorable J. Frederick Motz of this Court, where the plaintiff has failed to allege *facts* sufficiently stating a plausible §1983 *Monell* claim against BPD for an alleged custom and policy of Fourth Amendment violations against African American citizens in Baltimore City.  *See Cook v. Howard*, 484 Fed. Appx. 805, 810-811 (2012).[3]  Plaintiff does not plead sufficient *facts* that identify a specific practice or custom of the Mayor and City Council that affirmatively authorizes a violation of a citizen's Fourth, Fifth, Eighth, or Fourteenth Amendment rights.   Moreover, to the extent that Plaintiff is alleging that the Mayor and City Council indirectly caused her constitutional injuries, likewise, the Amended Complaint is devoid of facts supporting §1983 *Monell* claim.

In other words, the Amended Complaint alleges nothing more than *respondeat superior* liability which is wholly insufficient to support a §1983 *Monell* claim.   In this regard, the

---

[3] "We agree with the district court that the amended complaint does not satisfy these requirements. The amended complaint suffers from a number of infirmities with respect to the claims the BCPD. Most strikingly, it repeatedly sets forth legal conclusions masquerading as factual allegations. Indeed, at times, the amended complaint misstates what the law is with respect to Monell and supervisory liability, thus pleading not only legal conclusions as opposed to fact, but inaccurate legal conclusions at that. The district court appropriately did not credit those portions of the amended complaint. Just as troubling, the amended complaint parrots the language of various legal theories without stating any facts to demonstrate that type of conduct. In so doing, the amended complaint 'tenders naked assertions devoid of further factual enhancement,', and is merely a '[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,' which are not sufficient to survive a motion to dismiss... Lastly, where the amended complaint alleges actual facts, those facts are either irrelevant to establishing a viable § 1983 or 1985 claim, or, where on point, do not 'state[] a plausible claim for relief,'... because they do not 'raise a right to relief above the speculative level.'"(citations omitted) *Cook v. Howard*, 484 Fed. Appx. 805, 810-811 (2012).

Amended Complaint purports to allege that Ofr. Markowski and Ofr. Bragg were acting under color of State law and within the course and scope of their employment with the City.   ECF Paper No. 6, 10:9-10; 10:16-17. These allegations are *legal* conclusions or "threadbare recitals of the elements" of §1983 *Monell* liability.   Moreover, they are incorrect as BPD officers are not agents, servants, or employees of the Mayor and City Council.   They are wholly insufficient, by themselves to support a §1983 *Monell* claim without factual enhancement.

The Plaintiff has not alleged sufficient facts for the Court to draw the conclusion that the Mayor and City Council had a policy or custom that authorized the purported misconduct alleged in the Amended Complaint, much less how the Mayor and City Council were "deliberately indifferent" to constitutional violations similar to the case at bar.   In sum, the Complaint falls far short of stating a "plausible" §1983 *Monell* claim against the Mayor and City Council.

### B.   PLAINTIFF'S STATE LAW CLAIMS AGAINST THE MAYOR AND CITY COUNCIL FAIL AS A MATTER OF LAW.

Plaintiff alleges assault, battery, and negligence against the Mayor and City Council. Plaintiff specifically alleges that:

a)   Defendants negligently hired Officers Markowski and Bragg, despite knowledge that they could harm the citizens of the City;

b)   Defendants failed to screen, or adequately screen, Officers Markowski and Bragg;

c)   Defendants failed to train, or adequately train, Officers Markowski and Bragg;

d)   Defendants failed to supervise, or adequately supervise, Officers Markowski and Bragg; and

e)   Defendants negligently retained them both even though Defendants knew, or should have known, that Officer Markowski and Bragg posed a danger to the public.

ECF Paper No. 6, 19:6-14.

All of the above-stated alleged negligent acts, if any, are not within the scope of control of the Mayor and City Council.  The Mayor and City Council is not responsible for the hiring, screening, training, supervising, retaining of BPD officers, or their alleged tortious conduct.  As discussed in greater detail above, Maryland law is abundantly clear that the Mayor and City Council may not be held liable in tort for the actions or omissions of the BPD or its officers.  *See, e.g., Clea,* 312 Md. at 669-70 (1988) ("As a matter of Maryland law, Baltimore City is simply not [the officers'] employer for tort liability purposes.").

Above and beyond even these clear edicts of Maryland law, the claims against the City would also fail under other aspects of Maryland law as well.  For instance, if the City were deemed (all law to the contrary) to be operating the BPD, the City would have governmental immunity from Plaintiffs' claims, as the provision of police protection is a quintessential governmental function.  *See, e.g., Mayor of Baltimore v. Whalen*, 395 Md. 154, 163 (2006) ("If the neglect or wrongful act was in the course of the performance of a purely governmental duty which had been imposed upon the municipality as a governmental or public agency by legislative enactment, there would be no liability in tort in favor of an individual who had been injured.").  The Plaintiff's state claims therefore fail for the same reasons that their federal constitutional claims fail, and every claim against the Mayor and City Council contained in the Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Mayor and City Council's Rule 12(b)(6) motion and dismiss Plaintiff's Amended Complaint.

Respectfully submitted,


_____/s/_____
Christopher R. Lundy
Federal Bar No.: 29888
Assistant Solicitor
Baltimore City Law Department
100 N. Holliday Street, LL 06
Baltimore, Maryland 21202
(410) 396-1424
(410) 547-1025 (f)
christopher.lundy@baltimorecity.gov
*Attorney for Defendants Mayor and City*
*Council of Baltimore*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July, 2014, that a true copy of the foregoing Memorandum of Law In Support of Defendant Mayor and City Council's Motion to Dismiss Plaintiff's Amended Complaint was filed in accordance with the electronic filing requirements and procedures as established by the U.S. District Court for the District of Maryland and was served via first-class mail, postage prepaid upon:

Baltimore City State's Attorney Gregg L. Bernstein, Esq.
120 East Baltimore St.
9th Floor
Baltimore, Maryland 21202

Commissioner Anthony Batts
Baltimore Police Department
Legal Affairs Division
242 W. 29th Street
Baltimore, Maryland 21211

Officer Paul Markowski
Baltimore Police Department
242 W. 29th Street
Baltimore, Maryland 21211

Officer Gregory Bragg
Baltimore Police Department
242 W. 29th Street
Baltimore, Maryland 21211

Respectfully submitted,

_____/s/_____
Christopher R. Lundy
Federal Bar No.: 29888
*Attorney for Defendants Mayor and City
Council of Baltimore*

28