FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2014 JUL 30 AM 10: 25
CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MARCELLA HOLLOMAN

*Plaintiff,*

v. CASE NO. 14-01516 CCB

STEPHANIE RAWLINGS-BLAKE, et al.

*Defendants*

**RESPONSE TO DEFENDANT GREGG L. BERNSTEIN'S MOTION TO DISMISS**

For the reasons stated in the accompanying memorandum, plaintiff Marcella Holloman submits this response in opposition to defendant GREGG L. BERNSTEIN's motion to dismiss. Defendant's claims of immunity and the assertion that the complaint doesn't state a claim for which the court can provide relief are not valid defenses that the defendant is entitled to.

Respectfully submitted,

MARCELLA HOLLOMAN
3531 Elmora Avenue
Baltimore, Maryland 21213

Dated: July 29, 2014

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
AM 10: 25
CLERK'S OFFICE
AT BALTIMORE
BY_______DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARCELLA HOLLOMAN

*Plaintiff,*

v. CASE NO. 14-01516 CCB

STEPHANIE RAWLINGS-BLAKE, et al.

*Defendants*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT GREGG L. BERNSTEIN'S MOTION TO DISMISS**

Plaintiff, Marcella Holloman, hereby files this memorandum in support of plaintiff's opposition to defendant GREGG L. BERNSTEIN's motion to dismiss. Plaintiff disputes defendant's motion and respectfully submits that for the reasons explained below, defendant's claims of immunity and any assertions that the complaint improperly states a claim for which the court can provide relief are not valid defenses that the defendant is entitled to and therefore defendant GREGG L. BERNSTEIN's motion to dismiss should not be granted. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). A complaint will survive a motion under Fed. R. Civ. P. 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought, *id.* at 1965-66, i.e., it need merely contain sufficient factual allegations to raise a right to relief above the speculative level, *id.* at 1965. The issue

before the Court upon consideration of such a motion is not whether plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc., 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012) (citing to Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001)).* As set forth in detail below, plaintiff has met this standard of review, well within the meaning of the foregoing case law, thus warranting denial of defendants' motions in their entirety.

**ARGUMENT**

On July 25, 2013, plaintiff filed in the Circuit Court for Baltimore City a request to issue a Writ of Mandamus on Maryland States Attorney, Mr. Gregg L. Bernstein, to compel him to present allegations contained in this matter to the Grand Jury for an investigation, upon his refusal to do so. Plaintiff contends that a proper investigation was not done and has been botched by his office, thus permitting criminal acts alleged to have been committed by our public officials to continue and to be perpetrated on others. This abuse of discretion, in not bringing criminal charges, when inconsistencies in the record of the botched investigation exists, against the named Baltimore City Police Officers in this action for murdering her son, Maurice Donald Johnson, will not only continue to cause irreparable harm to plaintiff but the citizens of Baltimore, as well. Criminal actions committed by Baltimore Police Officers that involving the shooting and killing of our citizens, when policies of the police department run counter to this abuse, cannot be tolerated in today's society. Our appointed officials need to answer to the citizens when ethical misconduct and malfeasance in the positions and offices they hold are alleged and when found, every effort possible must be undertaken to have them removed from public service.

Plaintiff has exhausted all remedies available for initiating criminal proceedings against the police officers aforementioned by petitioning a magistrate for Baltimore City, a court commissioner for the Department of Pretrial Services for the Maryland Department of Corrections, and submitting a criminal information report. This request was denied. Plaintiff then submitted a request to Maryland State's Attorney for Baltimore City, GREGG L. BERNSTEIN for criminal charges to be brought in this case. After considerable time, defendant refused to refer the matter for criminal charges. Plaintiff contends that the evidence defendant utilized in his investigation was fabricated by officials who have an interest in covering up the facts surrounding the need for charges. Defendant BERNSTEIN asserts no factual inadequacy and seeks dismissal "with prejudice" of this action because defendant would like this case to be closed that would cause him not to be accountable to the citizens of Baltimore City to present charges of criminal conduct, like those alleged to have to have been committed by all defendants in this action, of which are detailed in plaintiff's complaint. As stated above, if there is some inadequacy with the complaint, leave to amend the complaint is a common cure to that error. These arguments go to the merits, and as plaintiff has already addressed the merits at length in the Verified Complaint ("VC") (Doc. 1), plaintiff respectfully incorporates those allegations, as if fully set forth herein. To dismiss this complaint prior to reaching the merits of it would be of manifest injustice to the pursuit of respect for the "Rule of Law" because what this action demonstrates is a circumstance where "de facto" immunity exists for the defendants in this action where immunity is not in the discretion for the State's Attorney to provide to defendants.

## RULE 12(b)(6) MOTIONS

The Rule 12(b)(6) test has been revised in recent years. In *Conley v. Gibson*, 355 U.S. 41

(1957), the Supreme Court stated the interplay between Rule 8 (pleading) and Rule 12(b)(6) as follows: "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. In *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. It continued: "*Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* In *Ashcroftv. Iqbal*, 556 U.S. 662 (2009), the Court further elaborated on the test, including this statement: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Id.* at 1949 (citation omitted). Where a complaint is inadequate, leave to amend the complaint is common. *See, e.g.*, *Butt v. United Brotherhood of Carpenters & Joiners of America*, No. 09–4285, 2010 WL 2080034 (E.D. Pa. May 19, 2010).

This memorandum argues that defendant BERNSTEIN is not shielded by absolute or qualified immunity from the statutory claims for interference with and deprivation of clearly established constitutional rights, and that defendant is not shielded by absolute or qualified immunity from plaintiff's common-law claims. In addition to those significant distinguishing factors, defendant's suggestions must fail also because of his own conduct in that he knew that he was causing plaintiff to be deprived of his clearly established and fundamental rights, and deprivation of due process. That knowledge is sufficient to divest defendant of any *immunity to* which he may otherwise have been entitled. The question is not whether some right has been

established clearly at a highly abstract level . . . the question is whether, under the circumstances that confronted the official, "a reasonable official would understand that what he is doing violate[d] that right. Berthiaume v. Caron, Clark, Bivins, and O'Donohue, 142 F.3d 12, 15 (1st Cir. 1999), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); *see also* Hunter v. Bryant, 502 U.S. 224, 228-29 (1991) (per curiam); Brown v. Ives, 129 F.3d 209, 211-12 (1st Cir. 1997), cert. denied, __ U.S. __, 66 U.S.L.W. 3531 (Mar. 23, 1998). *See also* Robichaud v. Ronan, 351 F.2d 533 (1965), reversing the immunity-based dismissal of the action against a county attorney and his deputy, on the grounds that it was inappropriate to protect the defendants if they deprived the plaintiff of her rights, privileges, or immunities secured by the Federal Constitution and laws.

## EXCEPTIONS TO ELEVENTH AMENDMENT IMMUNITY

There are three main exceptions to the sovereign immunity of a state. First, the Eleventh Amendment does not stop a federal court from issuing an injunction against a state official who is violating federal law. Although the state official may be abiding by state law, he is not permitted to violate federal law, and a federal court can order him to stop the action with an injunction.[ Ex Parte Young, 209 U.S. 123 (1908) ] Money damages are possible against the state officer, as long as the damages are attributable to the officer himself, and are not paid from the state treasury. Scheuer v. Rhodes, 416 U.S. 232 (1974). Defendant BERNSTEIN is also being sued in his individual capacity, as are all of the defendants in this case.

The Eleventh Amendment does not automatically protect political subdivisions of the state from liability. Moor v. County of Alameda, 411 U.S. 693 (1973). The main factor is whether the damages would come out of the state treasury. Hess v. Port Authority Trans-Hudson Corp., 115 S. Ct. 394 (1994). If the state would have to pay for damages from the state treasury,

then the Eleventh Amendment will serve as a shield from liability. Other factors may include the amount of state control and how state law defines the subdivision, although the Supreme Court has never issued a comprehensive guideline. Eleventh Amendment immunity does not protect municipal corporations or other governmental entities that are not political subdivisions of the state, such as cities, counties, or school boards.

Finally, the states surrendered a portion of the sovereign immunity that had been preserved for them by the Constitution when the Fourteenth Amendment was adopted. Therefore, Congress may authorize private suits against non- consenting states to enforce the constitutional guarantees of the Fourteenth Amendment.

**IMMUNITY**

Government officials whose special functions or constitutional status requires complete protection from suits for damages -- including certain officials of the Executive Branch, such as prosecutors and similar officials, see Butz v. Economou,438 U. S. 478, and the President, Nixon v. Fitzgerald, 457 U. S. 731 are entitled to the defense of absolute immunity. However, executive officials in general are usually entitled to only qualified or good faith immunity. The recognition of a qualified immunity defense for high executives reflects an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority. Scheuer v. Rhodes, 416 U. S. 232. Federal officials seeking absolute immunity from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope. Pp. 457 U. S. 806-808.

Prior court decisions have recognized immunity defenses of two kinds. For officials whose special functions or constitutional status requires complete protection from suit, they have recognized the defense of "absolute immunity." The absolute immunity of legislators, in their legislative functions, see, e.g., Eastland v. United States Servicemen's Fund, 421 U. S. 491 (1975), and of judges, in their judicial functions, see, e.g., Stump v. Sparkman,435 U. S. 349 (1978), now is well settled. Those decisions also have extended absolute immunity to certain officials of the Executive Branch. These include prosecutors and similar officials, see Butz v. Economou,438 U. S. 478, 438 U. S. 508-512 (1978), executive officers engaged in adjudicative functions, id. at 438 U. S. 513-517, and the President of the United States, see Nixon v. Fitzgerald, ante p. 457 U. S. 731.

**ALLEGATIONS SPECIFIC TO DEFENDANT BERNSTEIN**

On July 25, 2013, plaintiff filed with the Chief Judge for the Circuit Court for Baltimore City a request to issue a Writ of Mandamus on Maryland States Attorney, Mr. Gregg L. Bernstein, to compel him to present this matter to the Grand Jury for an investigation, upon his refusal to do so. Plaintiff contends that a proper investigation was not done and has been botched by his office, thus permitting criminal acts alleged to have been committed by our public officials to continue and to be perpetrated on others. Plaintiff wrote a letter to the Chief Administrative Judge for the Baltimore City Circuit Court requesting to approach the Grand Jury but to this date, plaintiff has not received a response to it.

This abuse of discretion, in not bringing criminal charges, when inconsistencies in the record of the botched investigation exists, against the named Baltimore City Police Officers in this action for murdering her son, Maurice Donald Johnson, will not only continue to cause irreparable harm to plaintiff but the citizens of Baltimore, as well. Criminal actions committed

by Baltimore Police Officers that involving the shooting and killing of our citizens, when policies of the police department run counter to this abuse, cannot be tolerated in today's society. Our appointed officials need to answer to the citizens when ethical misconduct and malfeasance in the positions and offices they hold are alleged and when found, every effort possible must be undertaken to have them removed from public service.

Plaintiff has exhausted all remedies available for initiating criminal proceedings against the police officers aforementioned by petitioning a magistrate for Baltimore City, a court commissioner for the Department of Pretrial Services for the Maryland Department of Corrections, and submitting a criminal information report. This request was denied.

Plaintiff then submitted a request to the Maryland State's Attorney, Gregg L. Bernstein for criminal charges to be brought in this case. After considerable time, Mr. Bernstein refused to refer the matter for criminal charges. Plaintiff contends that the evidence Mr. Bernstein utilized in his investigation was fabricated by officials who have an interest in covering up the facts surrounding the need for charges.

With all remedies being exhausted, plaintiff then attempted to approach the foreperson of the Grand Jury on September 22, 2013, in an effort to have that honorable and important body investigate the allegations and present an indictment against the police officers for the violations of criminal law, as demonstrated. Plaintiff was informed that she was not permitted to be in that part of the building and was informed that she must contact the Administrative Judge for the Circuit Court for Baltimore City for permission to approach the Grand Jury foreperson or be subject to arrest. Plaintiff complied with these instructions fully and without incident, exited the building and sought the advisement of Judge Holland.

On September 23, 2013, Plaintiff submitted the request to approach the Grand Jury foreperson, for presentment of her claim to the remaining members of that body, as instructed by the clerk of Judge Holland. On January 9, 2013, plaintiff was informed by Judge Holland's office that the judge retired without taking any action on plaintiff's request. Plaintiff contends and reasonably understands that the judge's failure to respond to her request is just a further attempt to obstruct the justice that is sought and required in this case, if the judiciary is committed to ensuring that it can be trusted.

Plaintiff is currently preparing a complaint for charges against Judge Holland for obstruction of justice with the Maryland Commission on Judicial Disabilities and to the Unites States Department of Justice, Civil Rights Division for Constitutional violations of law. Plaintiff also intends to file a claim against the surety bonds of Judge Holland and the State's Attorney, Mr. Bernstein, in regard to their abuse and obstruction of justice. Every effort must be undertaken to ensure the public's trust in our government is maintained and holding them accountable will ensure just that.

In an action brought through the judicial process of Mandamus by William F. Brack against J. Bernard Wells, State's Attorney of Baltimore City, the plaintiff sought to compel the State's Attorney to present certain evidence to the grand jury. Generally, whether state's attorney does or does not institute a particular prosecution is a matter which rests in his discretion. Code 1939, art. 10, § 33; Const. art. 5, § 19.

Mandamus does not lie to compel state's attorney to institute a particular prosecution unless discretion of state's attorney in such matter is grossly abused, or such duty is compelled by statute, or there is a clear showing that such duty exists. Code 1939, art. 10, § 33; Const. art. 5, § 9.

The inquisitorial powers of the grand jury are broad, full and of a plenary character and are not limited to cases in which there has been a preliminary proceeding before a magistrate or to cases laid before them by the court or state's attorney, and the grand jury may investigate a case which state's attorney, in his discretion, has decided not to present to that body. Code 1939, art. 10, § 33; Const. art. 5, § 9.

The Court further instructs that an individual who unsuccessfully had requested the state's attorney to present to grand jury a case involving alleged violation of criminal laws, and who also made a complaint before a magistrate and a warrant was refused, was entitled to an opportunity to present his complaint to the grand jury for whatever action that body desired to take.

A citizen desiring to bring to grand jury's attention alleged violations of criminal laws should exhaust his remedy before the magistrate and state's attorney, and if relief cannot be had there, citizen then may ask foreman of grand jury for permission to appear before that body.

By the Constitution of Maryland, Article 5, Section 9, the State's Attorney shall perform such duties as may be law be prescribed. By section 33 of Article 10 of the Code, that officer is required to "prosecute and defend, on the part of the State, all cases in which the State may be interested." In such prosecutions of persons accused of crime, he must exercise a sound discretion to distinguish between the guilty and the innocent. He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control.

The office is one not purely ministerial, but involves the exercise of learning and discretion 42 American Jurisprudence, p. 245. As a general rule, whether the State's Attorney does or does not institute a particular prosecution is a matter which rests in his discretion.

Unless that discretion is grossly abused or such duty compelled by statute or there is a clear showing that such duty exists, mandamus will not lie. 38 Corpus Juris, p. 623; Boyne v. Ryan, 100 Cal. 265, 34 P. 707; McLaughlin v. Burroughs, 90 Mich. 311, 51 N.W. 283; State v. Talty, 166 Mo. 529, 66 S.W. 361.

Maryland law dictates that the adequate remedy to which a petitioner is entitled to is that of personally presenting his case to the grand jury of Baltimore City. Whether the petitioner should without formality present himself at the door of the grand jury room and ask to state his case or whether he should communicate with the foreman of the grand jury and ask for an opportunity to appear before that body is not for this Court to say. The members of the grand jury in their oath prescribed by the common law, in addition to other things, swore that they would diligently inquire and true presentment make of all such matters and things as shall be given them in charge or shall otherwise come to their knowledge.

The inquisitorial powers of the grand jury are not limited to cases in which there has been a preliminary proceeding before a magistrate nor to cases laid before them by the Court or State's Attorney. Whatever may be the duties and powers of that important body in other jurisdictions, in Maryland those inquisitorial powers are broad, full and of a plenary character.

The Court, speaking through Judge McSherry in the case of Blaney v. State, 74 Md. 153, 156, 21 A. 547, 548, said: 'However restricted the functions of grand juries may be elsewhere, we hold that in this state they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them.

The peace, the government, and the dignity of the state, the well-being of society, and the security of the individual demand that this ancient and important attribute of a grand jury should not be narrowed or interfered with when legitimately exerted.' In that same case and at the same reference is contained a very pertinent quotation as to the duties of the grand jury in language which cannot be improved upon here: 'To them is committed the preservation of the peace of the county; the care of bringing to light for examination, trial, and punishment, all violence, outrage, indecency, and terror; everything that may occasion danger, disturbance, or dismay to the citizen. They are watchmen, stationed by the laws to survey the conduct of their fellow-citizens, and inquire where and by whom public authority has been violated or the laws infringed."

These broad inquisitorial powers of the grand jury in this State have been further affirmed in many other cases among which are: In re Report of Grand Jury, 152 Md. 616, 621, 137 A. 370; Coblentz v. State, 164 Md. 558, 566, 166 A. 45, 88 A.L.R. 886; Hitzelberger v. State, 173 Md. 435, 440, 196 A.288. Under these broad inquisitorial powers the grand jury may, of course, investigate a case which the State's Attorney, in his discretion, has decided not to present to that body.

Upon the proper functioning of the grand jury the lives, security, and property of the people largely depend in the case of In re Lester, Mayor, 1886, 77 Ga. 143, at page 148: 'It is the right of any citizen or any individual of lawful age to come forward and prosecute for offenses against the state, or when he does not wish to become the prosecutor, he may give information of the fact to the grand jury, or any member of the body, and in either case, it will become their duty to investigate the matter thus communicated to them, or made known to one of them, whose obligation it would be to lay his information before that body.' And further in the case of State v. Stewart, 45 La.Ann. 1164, 14 So. at page 145, supra: 'It is complained by the defendant that one

S. A. Morgan, the leading state witness, went without summons or request before the grand jury, and gave his own version of the case against defendant, and instituted this prosecution. The witness had the undoubted right to go before the grand jury voluntarily, and disclose his knowledge of the case. As a good citizen, it was his duty to do so. No one can be excused for withholding knowledge of a crime from the public until he is summoned to give his testimony of its commission.' Hott v. Yarborough, 112 Tex. 179, 245 S.W. 676, supra.

It seems, therefore, from the cases herein cited, which might not be all on that subject, that the right of a private person to appear before the grand jury to make a complaint has been affirmed in the states of Louisiana, Alabama, Texas, and Georgia and denied in the state of Pennsylvania and also denied in Tennessee where the witness was not under oath. The Illinois Court seems to hold that there is adequate remedy before a magistrate and redress must be first sought there.

The Federal decisions are not controlling, as there is a Federal statute on the subject. The broad common law inquisitorial powers of the grand jury never have been curtailed by statute in this state but have been reaffirmed. As stated in the opinion upon which this motion is based, this Court said in the case of Blaney v. State, supra, 74 Md. At page 156, 21 A. at page 548: 'However restricted the functions of grand juries may be elsewhere, we hold that in this state they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them.' This Court further said in the case of In re Report of Grand Jury, 152 Md. 616, at page 622, 137, A. 370, at page 372: 'Presentments are accusations of crime made by the grand jury from their own knowledge or from evidence furnished them by witnesses or one or more of

their members.' If the presentation of cases before the grand jury in Baltimore City is controlled entirely by the State's attorney as the appellant contends in his brief, the question naturally arises as to why there should be a grand jury. It has been the custom in many of the counties of this State for private persons to make complaints to the grand juries. In this State no action has been taken to do away with that important body.

While prosecutorial discretion is admittedly broad, the court has recognized that it is subject to some judicial oversight. What the court has said on the subject in Brack v. Wells, is worth repeating: "By the Constitution of Maryland, Article 5, Section 9, the State's Attorney shall perform such duties as may by law be prescribed. By Section [34] of Article 10 of the [current] Code, that officer is required to 'prosecute and defend, on the part of the State, all cases in which the State may be interested.' In such prosecutions of persons accused of crime, he must exercise a sound discretion to distinguish between the guilty and the innocent. He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control. 184 Md. 86, 90, 40 A.2d 319, 321 (1944) (emphasis added) (citation omitted) While, as the court has recognized, that prosecutorial discretion is broad, see Evans v. State, 396 Md. 256, 298, 914 A.2d 25, 49 (2006)("State's attorneys retain the broad discretion . . . in determining which cases to prosecute, which offenses to charge, and how to prosecute the cases they bring."); see also Beverly v. State, 349 Md. 106, 121, 707 A.2d 91, 98 (1998) ("It is well-settled that the determination of which criminal charges, if any, to bring is a matter of prosecutorial discretion."); Sinclair v. State, 278 Md. 243, 252, 363 A.2d 468, 474 (1976) Because it is clear that the state's attorneys in this State have very wide and largely unreviewable discretion as to whether or not to pursue the prosecution of criminal offenses, an independent

investigation by the Grand Jury should be commenced to ensure that justice and fairness is upheld.

**CONCLUSION**

For the enclosed reasons the Court should deny the request of Defendant's counsel. Every effort must be undertaken to ensure the public's trust in our government is maintained and holding them accountable will ensure just that. Criminal misconduct by elected officials has become a recurring issue in Baltimore and the citizens, as well as municipal employees deserve and expect city officials to act in the public's best interest. Yet contrary to this, we have been subjected to one story after another about corrupt officials using positions of influence to benefit only them, while diminishing the rights of the citizens.

There have been countless allegations of this sort of conduct being demonstrated in the media, on postings on the internet, and complaints filed before agencies charged with investigating them, yet these occurrences rarely get the level of attention that is required to uncover the criminal conduct involved. There is a culture of corruption that trumps the rights of the citizen in Baltimore and as a result it has shaken the public's trust in those government officials.

Respectfully,

Marcella Holloman

Marcella Holloman
3531 Elmora Avenue
Baltimore, Maryland 21213

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MARCELLA HOLLOMAN

Plaintiff,

v. CASE NO. 14-01516 CCB

STEPHANIE RAWLINGS-BLAKE, et al.

Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about the 29th day of July, 2014, a copy of the foregoing was sent by first class mail, postage prepaid, to defendant at the following address:

Attorney for Defendant: **GREGG L. BERNSTEIN**

DOUGLAS F. GANSLER
Attorney General for Maryland
Jennifer L. Katz, Bar No. 28973
Office of the Attorney General
Civil Division
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202

Respectfully submitted,

Marcella Holloman

Marcella Holloman
3531 Elmora Avenue
Baltimore, Maryland 21213