# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARCELLA HOLLOMAN              :
                                   :
                                   :
      v.                         :          Civil No. CCB-14-1516
                                   :
                                   :
STEPHANIE RAWLINGS-BLAKE, *et al.*   :

## MEMORANDUM

Plaintiff Marcella Holloman, proceeding pro se and on behalf of her deceased son, Maurice Donald Johnson, filed this action against the Mayor of Baltimore City,[1] fifteen members of the Baltimore City Council,[2] the State's Attorney for Baltimore City,[3] the Commissioner of the Baltimore Police Department,[4] and two Baltimore Police Department ("BPD") officers,[5] based on the tragic shooting death of her son by those two BPD officers.  Holloman's amended complaint alleges claims under section 1983 for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  She also brings claims under the Americans with Disabilities Act ("ADA"); section 504 of the Rehabilitation Act of 1973 ("section 504"); sections 1985(3) and 1986 of Title 42 of the United States Code ("sections 1985 and 1986"); and Maryland common law.  All of the defendants except the two BPD officers have filed motions to dismiss.  For the reasons stated below, these motions to dismiss will be granted.[6]

## BACKGROUND

---

[1] Defendant Stephanie Rawlings-Blake.
[2] Defendants Warren Branch, Mary Pat Clarke, William Cole, Robert Curran, Sharon Green Middleton, Bill Henry, Helen Holton, James B. Kraft, Nick Mosby, Stephanie Rawlings-Blake, Edward Reisinger, Brandon Scott, Rochelle Rikki Spector, Carl Stokes, William "Pete" Welch, and Bernard "Jack" Young.
[3] Defendant Gregg Bernstein.
[4] Defendant Anthony Batts.
[5] Defendants Paul Markowski and Gregory Bragg.
[6] Also pending are several motions by Holloman.  Her motion seeking leave to amend her complaint will be denied. Amendment would be futile because she seeks only to add defendants—Maryland Governor Martin O'Malley and Maryland State Police Superintendent Marcus Brown—who would be entitled to immunity.  Holloman's other motions, which seek to file surreplies and responses to answers, will also be denied.

Holloman brings this lawsuit on behalf of the estate of her deceased son, Maurice Donald Johnson, who was shot and killed by BPD officers Markowski and Bragg at Holloman's home on May 19, 2012.  Holloman's amended complaint alleges the following facts.

At the time of his death, Johnson, a 31-year-old, was living with Holloman at their shared home located at 3351 Elmora Avenue in Baltimore City.  (Am. Compl. ("Compl.") 10, ECF No. 6.)[7]  Johnson carried a diagnosis of bipolar disorder, for which he received disability benefits. (Compl. 9.)  That Johnson was bipolar was "well known," both because a record of his disorder existed in the Maryland state database of persons known to have mental disorders and because Officer Markowski had become aware of Johnson's disorder through prior interactions.  (*Id.*)

On May 19, 2012, at around 5:00 p.m., Johnson arrived at 3351 Elmora Avenue "visibly upset."  (Compl. 10.)  Holloman, not knowing what had made Johnson upset, attempted to take Johnson to the hospital for treatment, but he refused to go.  (*Id.*)  At around 5:05 p.m., Holloman called 911 seeking the assistance of both the BPD and the Baltimore Fire Department in transporting Johnson to the hospital.  (*Id.*)  Officers Markowski and Bragg, who were in uniform and on duty at the time, immediately responded to Holloman's call.  (*Id.*)

Officer Markowski was the first to arrive at 3351 Elmora Avenue, at 5:17 p.m.  (*Id.*) Upon Officer Markowski's arrival, Holloman told him that Johnson was "o.k." or "fine" and that he was in the backyard, beyond the closed and locked rear door.  (Compl. 11.)  Holloman suggested that Officer Markowski wait for backup before approaching Johnson, as BPD policy apparently required.  (*Id.*)  Officer Markowski "paid no mind" to Holloman's suggestion and instead began looking around the home, eventually entering the kitchen area.  (*Id.*)  Holloman

---

[7] Because Holloman's amended complaint does not have numbered paragraphs, citations are to the page number of her amended complaint.

repeated her request for Officer Markowski to wait for backup and specifically asked him to wait in the front area of the home.  (*Id.*)

Shortly thereafter, Officer Bragg arrived and joined up with Officer Markowski in the rear area of the home.  (*Id.*)  Officer Markowski called Johnson's name, which prompted Johnson to knock on the rear door from the outside.  (*Id.*)  At this time, Officer Bragg undid the safety strap to his service weapon.  (*Id.*)  Holloman told Officer Bragg not to shoot Johnson. (*Id.*)  Officer Bragg then unlocked and opened the rear door.  (*Id.*)

The officers grabbed Johnson by the arms even though they had no reasonable suspicion or probable cause that Johnson had committed a crime.  (Compl. 12.)  At no time did Johnson make any sudden movements or gestures that could be interpreted by the officers as aggressive or threatening.  (*Id.*)  Nor did Johnson say or do anything that would cause either officer to fear imminent bodily harm.  (*Id.*)  The officers could "clearly see" that Johnson was unarmed.  (*Id.*) Without provocation or justification, Officer Markowski physically attacked Johnson, who "attempted to resist this unlawful force."  (*Id.*)

Johnson broke free from the officers' grip, and a struggle ensued.  (*Id.*)  During this struggle, both Officers Markowski and Johnson fell to the floor.  (*Id.*)  Johnson got on top of Officer Markowski, who then grabbed his service weapon and, at point blank range, shot Johnson twice in the chest.  (*Id.*)  Officer Bragg also shot Maurice once in the back.  (*Id.*) Johnson fell forward and died.  (*Id.*)  The time between the officers' arrival and Johnson's death was about one minute or less.  (*Id.*)

Liberally construed, Holloman's amended complaint alleges defendants violated Johnson's rights in a variety of ways.  The gist of her complaint is that Officer Markowski and Officer Bragg used excessive and deadly force in violation of the Fourth Amendment when they

shot and killed Johnson.  (Compl. 13.)  Holloman seeks to hold the City of Baltimore ("City")[8] liable for the officers' acts.  She alleges that the City's failure to supervise and train its police officers "constitute[d] gross negligence and/or deliberate and conscious indifference to people's rights[,]" including Johnson's.  (Compl. 15)  Holloman also brings claims under Maryland common law against Mayor Rawlings-Blake, the City Council, and State's Attorney Bernstein for the negligent hiring, screening, training, supervising, and retention of Officers Markowski and Bragg.  In Holloman's view, the defendants' acts constituted gross negligence.

Holloman seeks both injunctive and monetary relief.  She seeks a permanent injunction requiring the City to (1) make publicly available autopsy reports in police shooting deaths, (2) establish a public independent review board with subpoena power, (3) make publicly available internal affairs reports in excessive force cases one year after any incident, and (4) remove from police complaint forms the requirement that citizens swear under oath to the facts in the complaint.  Holloman seeks damages for Johnson's pain and mental anguish, as well as damages for her pecuniary loss, termination of her parent-child relationship, mental anguish, and loss of inheritance.  Finally, she seeks punitive damages.

State's Attorney Bernstein moved to dismiss on July 22, 2014.  Mayor Rawlings-Blake and the fifteen Baltimore City Council defendants moved to dismiss on July 25, 2014.  BPD Commissioner Batts moved to dismiss on August 27, 2014.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived

---

[8] Holloman's amended complaint does not formally name the City of Baltimore, but she alleges that "[t]he City of Baltimore is also liable under 42 U.S.C. § 1983 . . . ."  (Compl. 15.)  Because "a plaintiff need not plead expressly the capacity in which [s]he is suing a defendant in order to state a cause of action under § 1983[,]" *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995), the court construes her amended complaint as bringing claims against the Mayor and City Council in both their personal and official capacities.

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[A] plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements . . . . [and] advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters*, 684 F.3d at 439 (citations omitted) (quoting *Twombly*, 550 U.S. at 570).

Holloman asserts a variety of claims against a variety of defendants. As a preliminary matter, Holloman's amended complaint, even liberally construed, does not allege sufficient facts to show violations of the ADA, section 504, sections 1985 and 1986, the Fifth Amendment, or the Eighth Amendment.[9] Accordingly, any claims made for violations of rights under those laws will be dismissed as to all of the defendants who have pending motions to dismiss.

---

[9] Holloman cites these laws in her introduction, but does not refer to them elsewhere. More importantly, the substance of the facts alleged throughout her amended complaint do not plausibly state claims under these laws. As one example, Holloman alleges violation of the Eighth Amendment, but nowhere alleges—or could plausibly allege—that she or Johnson was a prisoner. *See Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) ("In order to state a claim under the Eighth Amendment, a *prisoner* must allege that . . . ." (emphasis added)).

The court considers Holloman's remaining claims—which boil down to supervisory and municipal liability claims based on Officers Markowski and Bragg's putative use of excessive force and state law negligence claims—with respect to each of the three sets of defendants who have filed motions to dismiss: (1) State's Attorney Bernstein, (2) the Mayor and City Council of Baltimore, and (3) BPD Commissioner Batts.  These claims also must be dismissed.

## I.   Claims against State's Attorney Bernstein

Holloman alleges State's Attorney Bernstein was negligent in hiring, screening, training, supervising, and retaining the officers who shot and killed Johnson.  But Holloman's claims against Bernstein fail because these allegations of negligence are made only with respect to BPD Officers Markowski and Bragg—people over whom Bernstein, as State's Attorney, has no authority.  Responsibility for decisions to hire, screen, train, supervise, and retain BPD officers lies instead with the BPD Commissioner.  *See* Code of Public Local Laws of Baltimore City, § 16-7 (vesting BPD Commissioner with authority to "appoint, promote, reduce in rank, grade or position, reassign, reclassify, retire and discharge all members of the [Baltimore City Police] Department" and to "regulate attendance, conduct, training, discipline and procedure for all members of the [Baltimore City Police] Department"); *see also Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 438 (Md. Ct. Spec. App. 2001) (noting that the BPD Commissioner is responsible for the "hiring, training, and supervising of police officers" in Baltimore City). Accordingly, Holloman has not alleged any facts that could give rise to an inference that Bernstein, as State's Attorney, had a duty to use reasonable care in hiring, screening, training, supervising, or retaining BPD Officers Markowski and Bragg.

In her opposition, Holloman appears to reframe her claims against Bernstein as either a failure to prosecute or a failure to present evidence to the grand jury.  But Holloman is "bound

by the allegations contained in [her] complaint and cannot, through the use of motion briefs,

amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997)

(citations omitted).  Although Holloman has sought leave to amend her complaint, she seeks only

to add two additional defendants and does not alter the facts underlying any of her claims.  (*See*

Mot. Leave to File Am. Compl., ECF No. 38.)  Even if this court considered her new theory, "a

private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Moreover, decisions by State's

Attorney Bernstein whether to prosecute or present to a grand jury are "intimately associated

with the judicial phase of the criminal process," and are therefore entitled to absolute

prosecutorial immunity.  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).[10]

## II.  Claims against City, Mayor, and City Council

Holloman also seeks to hold the City, Mayor, and City Council liable.  She brings claims

under section 1983 and under Maryland negligence law.  Both sets of claims fail.

Holloman seeks to hold the City liable under section 1983 using two theories.  First, she

attempts to hold the City vicariously liable for the alleged misconduct committed by Officers

Markowski and Bragg within the scope of their employment,[11] but "a municipality cannot be

held liable *solely* because it employs a tortfeasor . . . ."  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 691 (1978) (emphasis in original); *see also Owens v. Baltimore City State's Attorney's*

---

[10] Even if Holloman could state plausible claims, they would be barred by the Eleventh Amendment.  *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).  State's Attorney Bernstein is a state official under Maryland law.  *See* Md. Const. art. V, § 7 ("There shall be an Attorney for the State in each county and the City of Baltimore, to be styled 'The State's Attorney' . . . ."); Md. Code, State Gov't § 12-101(a)(8) (defining "State personnel" to include "a State's Attorney of a county or Baltimore City").  And no Maryland statute waives Eleventh Amendment immunity here.  Because the Eleventh Amendment would apply, the court need not consider the MTCA.

[11] Her amended complaint notes that, "[a]t all material times, Officer Markowski and Officer Bragg were acting . . . as agents and employees of Defendant, the City of Baltimore . . . .  [The officers] were wearing their official Baltimore City Police Department uniforms, and were acting in the course and scope of their duties as Baltimore City Police Officers at the time they shot and killed [Johnson]."  (Compl. 13-14.)

*Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("[A] municipality is liable only for its *own* illegal acts." (emphasis in original) (citing *Monell*, 436 U.S. at 691)).

Second, she proceeds on a *Monell* theory, under which a municipality can be held liable "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens*, 767 F.3d at 402 (citing *Monell*, 436 U.S. at 694). A plaintiff must show both the existence of a municipal policy or custom and "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). But Holloman cannot continue under this theory because, even assuming she has stated a policy or custom, the City does not sufficiently control the BPD to be held liable. The BPD is a state, not City, agency under Maryland law. *See Mayor & City Council of Baltimore v. Clark*, 944 A.2d 1122, 1128-30 (Md. 2008); *Clea v. Mayor of Baltimore*, 541 A.2d 1303, 1306 (Md. 1988) ("Unlike other municipal or county police departments which are agencies of the municipality or county, the Baltimore City Police Department is a state agency." (internal citation omitted)); *see also* Code of Public Local Laws of Baltimore City, § 16-2(a) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland."). Accordingly, Officers Markowski and Bragg are not City employees, and the City exerts no authority over BPD policy. As another judge in this District has likewise held, "based on governing Maryland and federal law, . . . a § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers." *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 646 (D. Md. 2014). In short, the City cannot be held liable for the policy or custom Holloman alleges here.

Holloman's state law negligence claims against the City fail for analogous reasons. Simply put, because the City is not responsible for the hiring, screening, training, supervising, and retaining of BPD officers, including Officers Markowski and Gregg, it cannot be negligent with respect to those decisions.  And the City cannot be vicariously liable because, "as a matter of Maryland law, no liability ordinarily attaches to Baltimore City under the doctrine of respondeat superior for the torts of Baltimore City police officers acting within the scope of their employment."  *Clea*, 541 A.2d at 1306 (citations omitted).

To the extent that Holloman brings her claims against the Mayor and City Council members in their personal capacities, those claims fail too.  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (emphasis in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Yet Holloman does not allege any facts showing that Mayor Rawlings-Blake or any of the fifteen City Council defendants personally caused Officer Markowski and Bragg's shooting of Johnson.  Absent allegations that make plausible such a link, Holloman's claims against them in their personal capacities also must be dismissed.

### III. Claims against BPD Commissioner Batts

Finally, Holloman brings claims against BPD Commissioner Anthony Batts, presumably on a theory of supervisory liability.[12]  Courts are split on "the continuing vitality and scope of supervisory liability" after the Supreme Court's *Iqbal* decision.  *Lewis v. Tripp*, 604 F.3d 1221, 1227 n.3 (10th Cir. 2010).  Because the Fourth Circuit has yet to speak on this issue, this court applies the Fourth Circuit's preexisting supervisory liability test.  *See Shaw v. Stroud*, 13 F.3d

---

[12] Holloman's amended complaint does not allege that Batts directly engaged in or commanded the alleged unconstitutional conduct at issue here—the shooting of Johnson by Officers Markowski and Bragg.  As a result, supervisory liability is the only remaining basis for holding Batts liable.

791, 799 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994); *Randall v. Prince George's Cnty.*,

302 F.3d 188, 206 (4th Cir. 2002).  Under that test, Holloman's claims must be dismissed.

      To hold a supervisor liable under section 1983, a plaintiff must prove three elements: (1)

"that the supervisor had actual or constructive knowledge that his subordinate was engaged in

conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the

plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show

'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) "that

there was an 'affirmative causal link' between the supervisor's inaction and the particular

constitutional injury suffered by the plaintiff."  *Shaw*, 13 F.3d at 799 (citations omitted).

      Whether Holloman's amended complaint sufficiently states the first two elements of this

test is a close question.[13]  But this court need not decide that question because, construed

liberally, Holloman's amended complaint does not sufficiently state the third element.  Simply

put, Holloman cannot plausibly allege an "affirmative causal link" between Batts' alleged

inaction and the "particular constitutional injury" here—Johnson's shooting death—because

Officers Markowski and Bragg shot Johnson half a year before Batts became BPD

Commissioner on November 8, 2012.[14]  As a result, any inaction on Batts' part could not have

caused Johnson's death; while Batts could have been deliberately indifferent with respect to

other plaintiffs shot by BPD officers, he could not have been so with respect to Johnson.

Accordingly, Holloman's supervisory liability claims against Batts must be dismissed.

---

[13] Holloman refers to a *Baltimore Sun* article published on August 22, 2012, that details how BPD officers had shot ten people—eight of whom died and several of whom were mentally ill—in 2012.  (Compl. 15.)  Although Holloman does not attach this article to her amended complaint, she describes the events giving rise to the deaths of four victims.

[14] Although Holloman's amended complaint does not indicate when Batts became BPD Commissioner, a court considering a motion under Rule 12(b)(6) may consider facts of which  it "may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The court takes judicial notice of the fact that Batts was sworn in on November 8, 2012.  *See* Justin Fenton, *Batts Formally Sworn in as Baltimore Police Commissioner*, Baltimore Sun (Nov. 8, 2012), http://articles.baltimoresun.com/2012-11-08/news/bs-md-ci-batts-sworn-in-20121108_1_anthony-w-batts-violent-crime-mayor-stephanie-rawlings-blake.

**CONCLUSION**

The events giving rise to this lawsuit are undeniably tragic, and the court sympathizes with Holloman for the loss of her son.  Yet, for the reasons stated above, Holloman's claims against the defendants who have pending motions to dismiss are legally insufficient. Accordingly, the three pending motions to dismiss will be granted, and all pending motions to file surreplies and other responses to pleadings will be denied as moot.  Holloman's claims will proceed against Officers Markowski and Bragg.

A separate Order follows.


  12/12/2014                                            /s/
      Date                              Catherine C. Blake
                                        United States District Judge


11